MARCOS ARROYO, Adm'r of the Estate of Marcos Arroyo, Jr., Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (5th Division)   No. 1—93—1515

Opinion filed November 23, 1994.

Jillian H. Moltzen, of Brenner & Moltzen, Ltd., of Chicago, for appellant.

William H. Farley, Jr., of Chicago Transit Authority, and Richard T. Ryan and Mark F. Smolens, both of Flynn, Murphy, Ryan & Seyring, both of Chicago, for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

On August 12, 1980, in an attempt to retrieve a ball, the plaintiff's decedent, 11-year-old Marcos Arroyo, Jr., climbed onto the Chicago Transit Authority's (CTA's) elevated structure on the Douglas Line at approximately 1709 West 19th Street. The decedent came into contact with the third rail and was immediately electrocuted. Plaintiff filed a complaint alleging a cause of action for wrongful death.

On January 6, 1981, plaintiff served the statutory notice of intent to sue upon the CTA. Thereafter a lawsuit was filed in the circuit court of Cook County. Said lawsuit was voluntarily dismissed by the plaintiff on August 14, 1986. The present case was refiled on August 11, 1987.

On July 7, 1989, pursuant to Illinois Supreme Court Rule 220 (134 Ill. 2d R. 220), interrogatories were propounded upon the plaintiff. On July 22, 1992, the trial court entered an order setting the cause for trial on January 11, 1993. The order also provided: (1) plaintiffs shall disclose Rule 220 experts by August 15, 1992, and

shall provide defendant with the expert's opinions and the basis therefore by August 25, 1992; (2) plaintiff's experts shall be deposed by September 30, 1992; and (3) defendant shall identify Rule 220 experts by September 20, 1992, answer Rule 220 interrogatories by October 10, 1992, and produce experts for deposition by November 10, 1992.

On December 7, 1992, plaintiff's counsel presented a motion seeking leave to disclose an unidentified expert witness. After argument, the trial court denied the request. However, before an order was entered the court allowed plaintiff's counsel to withdraw the motion. On December 18, 1992, defendant's counsel received, via facsimile transmission, plaintiff's emergency motion to continue the trial. The plaintiff's basis for the continuance was the plaintiff's desire "to conduct additional depositions of C.T.A. employees in order to fully prepare for trial and receive a response to a Supplemental Request for Production before beginning trial." The motion further indicated that plaintiff's counsel had recently learned "that Augustine Arroyo, the only locatable eyewitness to the accident is presently in Mexico and is not scheduled to return until May, 1993." In an affidavit attached to the motion, plaintiff's counsel stated that the only other eyewitness, Alberto Ortega, had since married and moved from the area and had failed to stay in contact with the Arroyo family. The trial court continued the trial date to March 17, 1993.

On January 15, 1993, plaintiff filed answers to Rule 220 interrogatories naming an expert to testify as to "[t]he design of the support columns of the elevated structure at the location of the occurrence and the lack of warnings with respect to the presence of the third rail." The CTA filed an emergency motion to bar the plaintiff's purported Rule 220 expert. In its motion, the CTA alleged that plaintiff's counsel had indicated that the reason for the previous trial continuance "was not for the purposes of obtaining or disclosing a Rule 220 expert, but the purpose of continuing the trial was to attempt to locate a witness" and that defendant's counsel stated he would not object to a trial continuance but that he would object to the plaintiff attempting to disclose a Rule 220 expert. In response, plaintiff's counsel indicated that he had no illicit motive in bringing the motion for continuance and that subsequent to the granting of the continuance for good cause, plaintiff's counsel had sufficient time to disclose an expert in accordance with Rule 220 and after reflection did so in a timely manner. The defendant's motion to bar plaintiff's expert was granted.

On January 25, 1993, plaintiff filed a motion to overrule objections and to compel discovery. The trial court denied the motion to compel with two exceptions.

On March 10, 1993, plaintiff filed an additional emergency motion to continue trial, once again citing as the basis the fact that decedent's brother was unavailable. The motion further indicated that Alberto Ortega had married, moved from the area and was unavailable. The matter was assigned to trial on March 18, 1993.

At trial, Alberto Ortega testified to the circumstances under which the decedent came into contact with the third rail. Mr. Ortega testified that he had never before climbed the CTA's elevated structure, that he had never before observed the decedent climb the structure, and that he had no knowledge of the presence of an electrified third rail. Mr. Ortega also testified that his family knew where he was living during the past couple of years.

The decedent's father testified that although the elevated structure and trains were visible from his home, he conceded that he had never before warned his children about the danger of climbing up the structure onto the tracks. After denying any knowledge of the danger of the trains, decedent's father admitted that he never imagined his son would climb up on the tracks. He had never before seen anyone climb up the pillars supporting the elevated structure.

Edmund J. Enright was a captain with the Chicago fire department when he was assigned to investigate an electrocution on the 19th Street elevated structure. When he arrived at the scene he observed that the area had been secured by CTA personnel, noting that the original fireman who had arrived at the scene did not possess a ladder which was high enough to reach the elevated structure and that access was gained by using ladders from nearby rooftops.

David Josetti testified that he had been employed by the CTA for 25 years, 21 as a motorman. He was operating a northbound Douglas "B" train at the time he discovered the body of the decedent on the tracks. The bulk of Josetti's career as a CTA motorman was spent operating trains on the Douglas line. The incident at issue in the present case was the only such incident of which Josetti was aware.

A pathologist testified that the cause of decedent's death was electrocution. The plaintiff called a series of present and former CTA employees as witnesses to testify on various aspects of the operation of the Douglas and other elevated lines.

Decedent's mother testified that she had never seen her son or any other children climbing on the elevated structure in front of their home. Conceding the fact that she and her family lived in close proximity to the "El," she denied any knowledge of the danger. She testified that she never told her son not to go up where the trains were running because she never imagined that someday he might go up. Mrs. Arroyo denied that in April or May of 1980 she had been

called to her son's school and told that Marcos had climbed the building on the outside and got to the third-floor ledge.[1]

At the close of the plaintiff's evidence, plaintiff made a motion to amend the complaint to conform to the proofs. In addition, defendant presented a motion for a directed verdict. After argument by the parties, the trial court directed a verdict in favor of defendant and against the plaintiff. It is from this order that the plaintiff appeals.

Plaintiff presents four issues for review: (1)(a) whether the trial court abused its discretion when it failed to allow plaintiff to file an amended complaint alleging failure to warn, immediately prior to trial and (b) at the close of plaintiff's case in chief; (2) whether the trial court erred when it granted, in part, defendant's motion *in limine* which prevented plaintiff from introducing evidence of occurrences similar to that in which plaintiff's decedent was killed; and (3) whether the trial court erred in the granting of a directed verdict. The CTA responds that the trial court properly acted within its discretion in each of the above rulings.

For the following reasons, we affirm the decision of the trial court.

# I

On March 16, 1993, one day before the scheduled trial date, plaintiff's counsel served a motion for leave to file the "attached" amended complaint. On March 18, 1993, prior to the selection of the jury, plaintiff made a motion to amend his complaint. The amended complaint, in addition to the prior allegations of the defective condition of the structure itself as alleged in the original complaint, allegedly contained allegations that were directed at the absence of any warning signs posted on the elevated structure to indicate the danger of electricity above.

Plaintiff argues that defendant knew of plaintiff's intention to amend the complaint prior to being assigned to a trial judge, as evidenced by the March 16, 1993, letter. However, defendant argues that no such amended pleading was "attached to the notice and motion received by defense counsel, and no such amended pleading appears in the record before this court."

Plaintiff asserts that the allegations that plaintiff was attempting to add to his complaint were not new to the defendant and plaintiff's counsel had informed the trial judge of this fact when arguing the motion to amend. At that time plaintiff's counsel indicated that "[t]he questions at the depositions and some discovery questions—written

---

[1] Defendant had subpoenaed an employee of the school, whose testimony would have allegedly confirmed the incident.

discovery questions have been directed at the expert's report that I disclosed which was subsequently barred, was directed to warnings as well." In opposition to the motion the CTA argued that the complaint had originally been filed in 1981 and that the same complaint was refiled in 1987. In denying the plaintiff's motion, the court stated that the plaintiff had had 11 years in which to file his complaint; the plaintiffs filed a complaint; it sat around; it was voluntarily dismissed; it was refiled; and now it was time for trial. The trial court found that the plaintiff had slept on his rights.

■ The Illinois Code of Civil Procedure begins by stating "[t]his Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." (735 ILCS 5/1—106 (West 1992).) Amendments may be allowed on just and reasonable terms, at any time before final judgment. (735 ILCS 5/2—616(a) (West 1992).) In addition, a pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs. 735 ILCS 5/2—616(b) (West 1992).

The relevant facts to be considered in determining whether to allow the amendment of pleadings are: (1) whether the proposed amendments would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) the timeliness of the proposed amendment; and (4) whether previous opportunities to amend the pleadings could be identified. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273.) The decision whether or not to grant leave to amend a complaint rests within the sound discretion of the trial court. (*Regas v. Associated Radiologists, Ltd.* (1992), 230 Ill. App. 3d 959, 968.) However, the trial court should exercise its discretion liberally in favor of allowing amendment if allowing the amendment will further the ends of justice. *Beauvior v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294; see also *Regas v. Associated Radiologists, Ltd.* (1992), 230 Ill. App. 3d 959, 968.

Although the motion for leave to file an amended complaint stated that "the amended complaint, in addition to the prior allegations of the defective condition of the structure itself, contains allegations that are directed at the absence of any warning signs posted on the elevated structure," no proposed amended complaint appears in the record. As such we are unable to determine whether the amended pleading would have cured any defects in the original pleading.

The CTA asserts that the existence of prejudice and surprise to it had the trial court permitted the amendment could not reasonably be disputed. The CTA argues that because the plaintiff never

answered the Rule 220 interrogatories propounded in 1989, and did not identify an expert pursuant to the order of July 22, 1992, the defendant had no need to hire an expert witness when there was to be no expert testimony presented on behalf of the plaintiff, and no theory of recovery had been pled in this case for which a defense expert's testimony might be required. Finally, the CTA argues that because the plaintiff's proposed amendment potentially altered the nature of the proof required to defend, the trial court properly denied its filing. We agree with the defendant's position.

In *Lee v. Chicago Transit Authority* (1992), 152 Ill. 2d 432, 466, prior to closing argument, the trial court allowed plaintiff to amend her complaint to allege that the CTA had used and transmitted electricity without safeguards. The Illinois Supreme Court noted its disagreement with the CTA's assertion that the amendment changed the theory of the case in that there was no allegation that plaintiff's amendment was for the purpose of curing a defect in the pleading. Thus, the court found that factor irrelevant to its analysis. The court stated:

> "Additionally, because amendments may be allowed at any time before the entry of a final judgment [citation], the timeliness of plaintiff's amendment is not at issue." (*Lee*, 152 Ill. 2d at 468.)

However, in *Lee*, the court found that the amendment did no more than conform the pleadings to the evidence adduced at trial. In addition, the court stated that although plaintiff had had other opportunities, prior to the close of the defendant's case to amend the pleadings, this factor standing alone did not amount to an abuse of discretion on the part of the trial court since the CTA was not prejudiced by the amendment.

In *Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, the appellate court found that the trial court did not abuse its discretion in denying the plaintiff leave to amend a complaint where plaintiff had four years within which to amend her complaint and six years had elapsed since the accident. In *Regas v. Associated Radiologists, Ltd.* (1992), 230 Ill. App. 3d 959, 969, the filing of an amendment six years after the filing of the original complaint and seven years after the accrual of the action was deemed unreasonable.

■ In the present case the motion to amend the pleadings came one day before trial, 11 years and 7 months after the initial filing of the complaint and $5^1/2$ years after the refiling of the complaint. Discovery had been closed and although the case had been previously set for trial, the plaintiff had been granted eleventh-hour continuances to accommodate witnesses. We do not believe that the trial court abused its discretion in denying plaintiff's leave to amend the complaint immediately prior to trial.

In his reply brief, plaintiff cites to *Cvengros v. Liquid Carbonic Corp.* (1981), 99 Ill. App. 3d 376, for the proposition that a trial court should not deny leave to amend solely on the basis of delay in filing, without a showing of prejudice to the opposing party other than mere inconvenience. In *Cvengros* the trial court had given no reason for the denial, and the amended pleading at issue was filed less than one year after the filing of the original complaint. We find the factual circumstances surrounding the timing of the filing of the amendment in the present case to be extremely different.

Finally, at the close of the plaintiff's case in chief, the plaintiff made a motion to conform the pleadings to the proofs. The trial court denied this motion. "Once the trial has commenced, leave to amend is properly denied where the facts upon which the proposed amendment are based were known to the party at the time of his original pleading and no good reason is offered for their not having been filed at that time." (*Delzell v. Moore* (1992), 224 Ill. App. 3d 808, 812.) The trial court did not err in denying the motion.

## II

Plaintiff argues that the trial court erred when it failed to allow plaintiff to introduce evidence of prior similar occurrences to that of the plaintiff.

Plaintiff asserts that through discovery in the case, plaintiff obtained information from the defendant regarding similar occurrences wherein individuals had either climbed the elevated tracks, were found electrocuted on the elevated tracks, or other situations where individuals came to be upon the elevated tracks. Defendant made a motion *in limine*, requesting that plaintiff be prohibited from introducing evidence as to "any incidents of electrocution with contact of the CTA third rail at any location aside from the location alleged in the plaintiff's complaint." Plaintiff's counsel argued that he wanted to introduce the prior incidents "for the purpose of showing notice."

The trial court granted the motion in part, in that plaintiff was only allowed to use the evidence of one prior incident which occurred on the same rail line. The trial court further stated:

"I think the structures are different in terms of accessibility. On one of the lines, one of the photographs that [plaintiff's counsel] showed me, the structure forms an *** and you can climb up *** that fashion. It's readily accessible, and in one of the other lines, I believe the latticework is different.

Whether that goes to the ability of the child or some minor to easily or with difficulty climb up, I don't know, but I think that

those are just so different from our fact situation I think it would be prejudicial to the CTA to allow them, the plaintiff, to use other electrocutions on different railroad lines.

The lattice work on the Douglas line, as I've been advised, is the same. I'm going to allow [plaintiff's counsel] to use that electrocution as notice to the jury."

■ Plaintiff maintains that the plaintiff should have been entitled to utilize prior accidents on elevated structures throughout the CTA's rail system to demonstrate the CTA's notice of a dangerous condition. Plaintiff cites to *Templeton v. Chicago & North Western Transportation Co.* (1993), 257 Ill. App. 3d 42, and *Lee v. Chicago Transit Authority* (1992), 152 Ill. 2d 432, for the proposition that if the evidence of prior accidents is being offered only to show the defendant's notice of the generally hazardous nature of the accident site, then the proponent does not have to establish a foundation showing the similarity between prior accidents and the present accident.

Plaintiff's complaint alleged: "That the defendant was negligent in erecting and maintaining the support post in the condition herein described." The generally hazardous nature of the Douglas line was not at issue.

The question regarding whether an occurrence is sufficiently similar to the one at issue is generally left to the sound discretion of the trial judge. (*Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 1065.) We find no abuse of discretion.

### III

In his last contention of error, plaintiff argues that the trial court erred in granting the defendant's motion for a directed verdict.

The necessary elements of proof in a cause of action for negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Lee v. Chicago Transit Authority* (1992), 152 Ill. 2d 432, 460.) Whether a duty exists is a question of law for the court to determine. *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542.

The plaintiff alleged negligence on the part of the CTA which resulted in the death of plaintiff's decedent. The complaint alleged: (1) "the defendant knew that young children frequently used the lattice work on this or similar support posts as a ladder enabling them to climb upon the elevated tracks to engage in play"; (2) "the defendant knew that its elevated tracks were a place to [sic] extreme danger to young children who were incapable of appreciating the risk of electrocution involved in entering upon the elevated tracks";

(3) "it was the duty of the defendant to erect and maintain its support post so that it could not readily and easily be used as a ladder for young children; that the expense or inconvenience of remedying the condition was slight compared to the risk of children"; and (4) "the defendant was negligent in erecting and maintaining the support post in the condition herein described." In ruling on the motion, the trial court correctly noted that a verdict should be directed only in those cases in which all of the evidence when viewed in its aspect most favorable to the opponent overwhelmingly favors the movant or contrary verdict. Citing *Logan v. Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 236, the trial court stated:

> "[B]efore a duty will be imposed on an owner or party in possession [*sic*] must be shown that he knows or should know that children frequent the premises and caused the child's injury was a dangerous condition on the premises. Unless these two prerequisites are met, harm to the child will not be deemed sufficiently foreseeable such that the law would impel the owner or party in possession to remedy the condition."

The court in *Logan* further stated that the test for assessing liability in a negligence action involving injury to a child on an owner or occupier's premises is foreseeability and the rationale for this rule is that since children are expected to avoid dangers that are obvious, there is no foreseeable risk of harm to them. *Logan,* 139 Ill. 2d at 237.

The trial court found no credible evidence in the record to support the notion that the CTA knew or should have known that children frequent the premises. The court stated, "What we have in this case is an incident of electrocution which took place in 1976 *** at a nearby Douglas line station. But as to our station in question, there is no such competent testimony in the record."

Plaintiff argues that the cumulative effect of the trial court barring the amendment to the complaint and prohibiting the introduction of the prior occurrence evidence resulted in cumulative error in this case and further led to the trial court's decision to grant a directed verdict. As we have found the other actions of the trial court not to constitute error we do not address the allegation of cumulative error.

We believe that the trial court properly ruled on the motion for directed verdict. No evidence was presented that the CTA should have reasonably anticipated a child would climb up the lattice work of this support post to retrieve a toy. Decedent's parents both testified that they never warned their son of any dangers on the elevated structure because they could not imagine anyone climbing up the structure.

The death of a child is always a tragedy. However, every incident is not the result of negligence.

Accordingly, for all the reasons set forth above, we affirm the decision of the trial court.

Judgment affirmed.

GORDON and McNULTY, JJ., concur.