JOAN BERG, Plaintiff-Appellant, v. ALLIED SECURITY, INC., CHICAGO, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—96—4199

Opinion filed June 29, 1998.

CAMPBELL, P.J., specially concurring.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London (Alvin R. Becker and Christopher A. White, of counsel), and Harvey L. Walner & Associates, Ltd. (Annette E. Pinhasik, of counsel), both of Chicago, for appellant.

Meachum & Little, of Chicago (Robert L. Larsen, of counsel), for appellee Allied Security, Inc., Chicago

Sweeney & Riman, Ltd. (Mary Jo Connelly and David A. Weber, of counsel), and Stephen C. Debboli & Associates (Stephen C. Debboli, of counsel), both of Chicago, for appellee Podolsky & Associates, Inc.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Joan Berg, brought a personal injury action against the defendants, Allied Security, Inc., Chicago (Allied), and Podolsky & Associates, Inc. (Podolsky). On September 4, 1996, the circuit court granted both defendants' motions for summary judgment. Plaintiff subsequently filed a motion to reconsider, which requested, in the alternative, leave to file a second amended complaint. On October 15, 1996, plaintiff's motion for reconsideration was denied and the court took plaintiff's request for leave to file a second amended complaint under advisement. The court ultimately denied the request on November 21, 1996. Plaintiff filed her notice of appeal on November 26, 1996.

Our initial inquiry concerns whether we have jurisdiction to hear this appeal. Defendants contend that plaintiff's notice of appeal was untimely since there was no legitimate postjudgment motion filed within 30 days of the September 4, 1996, order granting summary

judgment, which was a final judgment. Defendants argue that plaintiff's motion for reconsideration was invalid because it did not include any specific grounds that would warrant the court's reversal of its decision, was nothing more than an attempt to stall for time and, therefore, did not extend the time in which to file a notice of appeal. After thoroughly reviewing the record, the briefs and the case law, we have determined that plaintiff's notice of appeal was timely and this court has jurisdiction of this appeal. We conclude that plaintiff's motion to reconsider met the requirements for postjudgment motions as set out by section 2—1203 of the Code of Civil Procedure (735 ILCS 5/2—1203 (West 1994)), thus triggering the extension of time in which to file a notice of appeal.

■ There are two separate statutes that address posttrial, or postjudgment, motions. Posttrial motions in jury cases are governed by section 2—1202 of the Code of Civil Procedure. 735 ILCS 5/2—1202 (West 1994) (formerly Ill. Rev. Stat. 1981, ch. 110, par. 68.1). Posttrial motions in nonjury cases are governed by section 2—1203 of the Code of Civil Procedure. 735 ILCS 5/2—1203 (West 1994) (formerly Ill. Rev. Stat. 1981, ch. 110, par. 68.3).

In both jury and nonjury cases, posttrial motions must be filed within 30 days after the entry of judgment. 735 ILCS 5/2—1202(c), 2—1203(a) (West 1994); 155 Ill. 2d R. 303(a)(1). The parties do not dispute and the supreme court has held that a motion to reconsider a judgment falls within that category of postjudgment motions that must be filed within 30 days after the judgment is entered. See *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 470 N.E.2d 290 (1984). A timely filed posttrial motion stays enforcement of the judgment. 735 ILCS 5/2—1202(d), 2—1203(b) (West 1994). In that instance, the time for appeal does not begin to run until the trial court rules on the postjudgment motion. 155 Ill. 2d R. 303(a)(1). While these provisions are similar in both statutes, there are other critical distinctions between the two statutes with respect to the necessity of filing the motion in the first instance, as well as the required contents of the motion.

The statute dealing with posttrial motions in *jury* cases provides in pertinent part:

"§ 2—1202. ***

(b) Relief desired after trial in jury cases *** *must* be sought in a single post-trial motion. *** *The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired,* as for example, the entry of a judgment, the granting of a new trial or other appropriate relief. Relief sought in post-trial motions may be in the alternative or may be conditioned upon the denial of other relief asked in pref-

erence thereto, as for example, a new trial may be requested in the event a request *for judgment is denied.*" (Emphasis added.) 735 ILCS 5/2—1202 (West 1994).

On the other hand, the statute dealing with postjudgment motions in *nonjury* cases provides in pertinent part:

"§ 2—1203. *** (a) In all cases tried without a jury, any party *may*, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." (Emphasis added.) 735 ILCS 5/2—1203 (West 1994).

Thus, the critical distinctions between the two statutes are that a posttrial motion is optional in a nonjury case, but mandatory in a jury case, and only the motion in a jury case must contain the specific grounds relied upon. See also *In re Marriage of Jerome*, 255 Ill. App. 3d 374, 389, 625 N.E.2d 1195, 1206-07 (1994) (section 2—1203 of the Code of Civil Procedure governs posttrial motions in nonjury cases and does not mandate the detail as required by section 2—1202, which applies to jury cases).

Section 2—1203 gives a litigant in a nonjury case the right to request that a judge reconsider his ruling; the statute does not impose the additional burden of requiring the litigant to specify the grounds. Had the legislature wanted to require such specificity in posttrial motions filed in nonjury cases, it would have included the language, as it did for the motions filed in jury cases.

This distinction between jury cases and nonjury cases is recognized by Supreme Court Rule 366(b). 155 Ill. 2d R. 366(b). In *jury* cases, the rule states that "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion." 155 Ill. 2d R. 366(b)(2)(iii). In *nonjury* cases, however, the rule merely states that "[n]either the filing of nor the failure to file a post-judgment motion limits the scope of review." 155 Ill. 2d R. 366(b)(3)(ii); see also *In re Marriage of Steadman*, 283 Ill. App. 3d 703, 712, 670 N.E.2d 1146, 1153 (1996) (in a nonjury proceeding a litigant may forego filing a posttrial motion and may assert as error grounds raised for the first time on appeal). Supreme Court Rule 303, which governs appeals from final judgments, requires that postjudgment motions be timely filed, but is silent as to the contents of such motions. 155 Ill. 2d R. 303.

■ While we realize that the language in Rule 366(b) deals with the court's "scope of review" rather than its "jurisdiction," we deem it incongruous to say that our scope of review is not limited by the existence of a posttrial motion *or* its contents in a nonjury case, but that,

once a postjudgment motion is filed, our jurisdiction is dependent upon its contents. Thus, we conclude that, despite the fact that plaintiff's motion did not contain the specific grounds relied upon for its request for relief, it nonetheless met the requirements of section 2—1203 and was a valid postjudgment motion. Thus, plaintiff's notice of appeal was timely filed within 30 days of the trial court's ruling on the postjudgment motion.

■ In arriving at our conclusion, we are mindful of the language to the contrary contained in the supreme court cases of *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 549 N.E.2d 1262 (1990), and *Beck v. Stepp*, 144 Ill. 2d 232, 579 N.E.2d 824 (1991). However, with all due respect and deference to the supreme court, we are not bound to follow the *dicta* of either *Andersen* or *Beck*.

We first note that the *dicta* contained in both *Andersen* and *Beck* were expressions of opinion upon points in the cases deliberately passed on by the court; thus, they are properly characterized as judicial *dicta* rather than mere *obiter dicta*. *Wolf v. Meister-Neiberg, Inc.*, 194 Ill. App. 3d 727, 730, 551 N.E.2d 353, 355 (1990), *aff'd*, 143 Ill. 2d 44, 570 N.E.2d 327 (1991). The distinction can be critical because *obiter dicta*, even of the supreme court, while persuasive are not binding, but judicial *dicta* generally establish binding precedent. See *Ko v. Eljer Industries, Inc.*, 287 Ill. App. 3d 35, 41, 678 N.E.2d 641 (1997). Therefore, we normally would have to follow the *dicta* in question because of the general rule that judicial *dicta* establish binding precedent. The supreme court, however, added a caveat to the general rule when it stated that judicial *dicta* should be followed "unless found to be erroneous." *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d 715, 717 (1993). We, therefore, decline to follow the *dicta* of *Andersen* or *Beck* because we have determined that they are erroneous.

In *Andersen*, the supreme court stated that a postjudgment motion must (1) include a request for at least one of the forms of relief specified in section 2—1203 and (2) allege grounds that would warrant the granting of the relief requested. *Andersen*, 133 Ill. 2d at 347. Because the plaintiff's motion in *Andersen*, which was merely a motion for leave to amend, failed in the first instance to include a request for any of the forms of relief specified in section 2—1203, the court did not address the merits of the second criterion. *Andersen*, 133 Ill. 2d at 347-48, 549 N.E.2d at 1264. Unlike the plaintiff in *Andersen*, plaintiff here filed a proper motion to reconsider.

Nevertheless, in *dictum*, because it was not essential to the disposition of the case, the *Andersen* court noted that the posttrial motion at issue lacked specificity and was "nothing more than a title and an ambiguous prayer for relief with absolutely no substance in between."

*Andersen*, 133 Ill. 2d at 347, 549 N.E.2d at 1264. In discussing the specificity requirement, the *Andersen* court relied upon the case of *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 415 N.E.2d 337 (1980). The *Andersen* court, however, failed to note that *Brown* was a *jury* case decided under the statute dealing with *jury* cases. The posttrial motion in question in *Brown* was determined to be inadequate under section 68.1(2) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.1(2)) and Supreme Court Rule 366(b)(2)(iii) (73 Ill. 2d R. 366(b)(2)(iii)), both of which applied to *jury cases*. Thus, we conclude that the judicial *dictum* in *Andersen* was erroneous and did not engraft a specificity requirement onto posttrial motions filed in nonjury cases.

While the specificity requirement was again pronounced in *Beck v. Stepp*, 144 Ill. 2d 232, 579 N.E.2d 824 (1991), there the court decided that a letter that plaintiff had contended was in substance a "posttrial motion" did not meet the statutory requirements in that it failed to include a request for at least one of the forms of relief specified in section 2—1203. *Beck*, 144 Ill. 2d at 240, 579 N.E.2d at 828. Thus, similar to the plaintiff in *Andersen*, the document in issue did not qualify as a postjudgment motion in the first instance, regardless of its lack of specificity. Since the *Beck* court's subsequent reference to the specificity requirement of posttrial motions, which was based entirely upon the erroneous *dictum* of *Andersen*, was not essential to the disposition of the case, it too was a judicial *dictum*—an erroneous judicial *dictum* we need not follow.

This court has previously acknowledged that section 2—1203 contains no language requiring specificity, but stated that the supreme court in both *Andersen* and *Beck* "clearly grafted such a requirement onto section 2—1203." *Mendelson v. Ben A. Borenstein & Co.*, 240 Ill. App. 3d 605, 615, 608 N.E.2d 187, 193 (1992). An analysis of the correctness of *Andersen*'s *dictum* was not necessary, however, since the plaintiff's postjudgment motion in *Mendelson* included a request for leave to file a supporting memorandum which the court determined satisfied the specificity requirement. Moreover, *Mendelson* was decided before *Cates*, the supreme court case that first announced that "erroneous" judicial *dicta* need not be followed.

Nevertheless, even after *Cates*, cases from both this district and others have cited with approval the judicial *dicta* of *Andersen* and *Beck* that specificity is required in a postjudgment motion in a nonjury case. See, *e.g.*, *J.D. Marshall International, Inc. v. First National Bank*, 272 Ill. App. 3d 883, 888, 651 N.E.2d 518, 521 (1st Dist. 1995); *Droen v. Wechsler*, 271 Ill. App. 3d 332, 334, 648 N.E.2d 981, 983 (1st Dist. 1995); *Sho-Deen, Inc. v. Michel*, 263 Ill. App. 3d 288, 291-93, 635

N.E.2d 1068, 1071-73 (2nd Dist. 1994); *In re Marriage of Sisk*, 258 Ill. App. 3d 388, 391, 630 N.E.2d 1289, 1292 (4th Dist. 1994). In view of our analysis of the judicial *dicta* of *Andersen* and *Beck* and our determination that they were erroneous, we respectfully disagree with any endorsement of the *dicta* contained in these cases.

Having determined that we have jurisdiction of this appeal, we now address the merits. Plaintiff appeals from the trial court's order granting summary judgment in favor of both defendants.

■ A trial court may render summary judgment if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992). A reviewing court conducts *de novo* review in an appeal from a trial court's grant of summary judgment. *In re Estate of Hoover*, 155 Ill. 2d 402, 615 N.E.2d 736 (1993). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536, 684 N.E.2d 167, 171 (1997). To survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle him to a judgment, but plaintiffs are not required to prove their case at the summary judgment stage. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256, 665 N.E.2d 1246, 1254 (1996). Summary judgment is a drastic means of disposing of litigation, and it must be clear that the moving party is truly entitled to such a remedy. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627 (1994). When considering a summary judgment motion, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Guerino v. Depot Place Partnership*, 273 Ill. App. 3d 27, 30, 652 N.E.2d 410 (1995). A motion for summary judgment should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

With these principles in mind, we conclude that summary judgment in favor of both Podolsky and Allied was incorrect as a matter of law. Both defendants had a duty towards plaintiff and genuine issues of material fact exist as to whether either defendant was negligent and whether either defendant's negligence proximately caused plaintiff's injuries. Plaintiff should be permitted to present the evidence in her case to a trier of fact.

On March 27, 1992, plaintiff Joan Berg was attacked in a parking lot by an unknown assailant. The parking lot was part of an office complex. Plaintiff's employer, along with various other commercial

tenants, was located in one of the buildings in the office complex, which was owned by Podolsky. At the time of plaintiff's attack, plaintiff was returning to work after having picked up pizzas for her coworkers on the 2 p.m. to 12 a.m. shift.

As plaintiff began to step out of her car, she was hit in the back of the head. When she turned to look, she saw a man standing over her with a solid metal bar. He pushed her into the car across the front seat, continuing to strike her repeatedly. When plaintiff sounded the horn, the attacker fled.

During the previous 6½ years, there had been no incidents of violent attacks in the parking lot, but there had been approximately 20 incidents of property damage to automobiles in the parking lot and one incident in which a woman's buttocks was fondled.

With respect to security measures, the lease between Podolsky and plaintiff's employer provided in pertinent part:

"12. CERTAIN RIGHTS RESERVED TO LANDLORD.

Landlord reserves the following rights:

\* \* \*

O. To install, operate and maintain a building security system which monitors, by closed circuit television or otherwise, all persons entering and leaving the Building."

Pursuant to this reserved right, Podolsky had a monitoring system in place. In addition, Podolsky hired Allied to provide security 24 hours per day.

The contract between Podolsky and Allied provided as follows:

"SECURITY GUARD SERVICE AGREEMENT

\* \* \*

2. A. The Client [Podolsky] desires Contractor [Allied] to provide security personnel to perform *mutually agreed upon tasks* \*\*\* and,

B. The Contractor desires to provide said personnel to perform such tasks.

The parties do mutually agree as follows:

3. Contractor shall furnish security personnel whose *principal posts* and hours of duty *shall be mutually agreed upon* by the Client and Contractor. If the Client changes the time or the amount of coverage originally requested, significantly alters the duties of the Contractor's personnel, or the nature of the Client's environment substantially changes, the Contractor reserves the right to renegotiate the contract.

4. Contractor shall at all times be in compliance with all [relevant] statutes, rules, regulations, ordinances and other regulatory procedures \*\*\*.

5. Contractor will provide personnel *to perform such services as may be agreed upon by Contractor and Client* and shall perform

such tasks as reasonably requested by the client and as are consistent with post duties; however, said personnel shall remain the employees of Contractor.

6. The hiring, training, uniforming, equipping, supervising, directing and discharging of all security guards shall be the sole function and responsibility of the Contractor." (Emphasis added.)

Thus, the contract shows that the defendants jointly decided upon the activities to be performed.

The post orders issued by Allied to its guards provided as follows:
"Your primary functions are as follows:

1. Keep unauthorized people from the property to reduce the risk of theft, vandalism, and *assault*.

2. Assist in access control for authorized visitors and employees.

3. Reduce the threat of damage to property due to fire, equipment failure, flooding, etc.

You will accomplish these functions by:

1. *Maintaining a high level of visibility*.

2. Properly dealing with situations that arise such as unauthorized visitors, unsecured building doors, equipment failures, etc.

3. *Constant vigilance* and effective reporting of events such as loiterers, fire hazards, etc.

4. Seeking assistance as needed in specified situations." (Emphasis added.)

The post orders further provided:

"You are reminded of previous training. You are *not* a police officer and are *not* to act as a police officer. You are to detect and prevent, when possible, security related problems.

\*\*\*

The specifics on these objectives and the method of operation are outlined in this manual." (Emphasis in original.)

Podolsky advertised to its tenants, including plaintiff's employer, that it would have security in place at all times, which included patrols of the parking lot. Podolsky decided how many guards were used. Initially, two security guards were used, one stationed at the security desk and one who roamed the grounds. When another tower was opened at the complex, an additional rover was added. In the past, Podolsky had replaced Allied employees who were unqualified for the security desk position.

In addition to retaining Allied, Podolsky installed 20 cameras located throughout the office complex that were connected to four monitors. The guard at the security desk controlled which camera views appeared on these four monitors in front of him; however, due to the additional responsibilities of the position, the guard could devote approximately half of his time to viewing the monitors. One of the

cameras could be used to scan the area of the parking lot where plaintiff's car was parked and, when in the scan mode, would have covered the area every few seconds. At the time of the attack, the camera was not in scan mode. Nine months after the attack, Podolsky fired Allied and retained a new security service.

■ "In an action for negligence, the plaintiff must set out sufficient facts establishing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach." *Rowe v. State Bank*, 125 Ill. 2d 203, 215, 531 N.E.2d 1358 (1988). Thus, since there can be no recovery absent a duty, the first issue we address is whether the defendants, Allied and Podolsky, owed a legal duty to Joan Berg. Acknowledging that it is sometimes difficult to separate the two concepts of duty and proximate cause, the supreme court has noted that they must be analyzed separately. *Dunn v. Baltimore & Ohio R.R. Co.*, 127 Ill. 2d 350, 364-65, 537 N.E.2d 738, 744 (1989). The existence of a duty is a question of law for the court to decide. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323 (1995). The court also determines the scope of the duty. *Cullotta v. Cullotta*, 287 Ill. App. 3d 967, 973, 678 N.E.2d 717, 720 (1997).

■ Generally, a landowner does not have a legal duty to protect others from criminal acts by third persons on his property, unless a "special relationship" exists between the parties. *Rowe v. State Bank*, 125 Ill. 2d at 215-16. An exception to this general rule has been recognized in those instances where a landlord voluntarily undertakes to provide security services, is negligent in his performance of the undertaking, and the negligence is the proximate cause of injury to the plaintiff. *Rowe v. State Bank*, 125 Ill. 2d at 215-16 (and cases cited therein). Thus, although there may be no *common law* duty to protect others, when a party agrees to provide security services for another, a duty arises, under the doctrine of voluntary undertaking, to exercise reasonable care in providing such protection. *O'Brien v. City of Chicago*, 285 Ill. App. 3d 864, 874, 674 N.E.2d 927, 935 (1996). We have concluded that Podolsky and Allied voluntarily entered into a contract, the terms of which constituted a voluntary assumption on the part of both defendants to protect plaintiff from the criminal acts of third parties on the premises.

Our supreme court first recognized the voluntary undertaking doctrine, which occurs where one gratuitously undertakes to render services to another and fails to perform those services with due care or with such competence and skill as he or she possessed, in *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 74, 199 N.E.2d 769, 773-74 (1964). The duty of care that arises in such a situation is limited to

the extent of the undertaking. *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 210, 399 N.E.2d 596 (1979). We recognize that, even where a property owner voluntarily assumes a duty to protect others from criminal acts of third persons, such an undertaking can never be construed as an insurance of absolute protection against crime. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 662 N.E.2d 1377 (1996). If it were, plaintiff here likely could have summary judgment entered in her favor. While we agree that defendants did not undertake to become absolute insurers for harm done to Berg by the criminal acts of third persons, that is clearly different from defendants' position that they had *no* duty with respect to such attacks.

■ The fundamental inquiry, then, is whether the scope of either defendant's duty encompassed the negligent acts alleged by plaintiff to be the cause of her injury. Here, pursuant to the lease between Podolsky and plaintiff's employer, Podolsky had exclusive control over the installation, operation and maintenance of the security monitoring system. In addition, by retaining Allied, Podolsky assumed a duty not to negligently hire the security firm. Finally, pursuant to the contract between Podolsky and Allied, whereby they mutually agreed upon the tasks to be performed by the security personnel and their principle posts, Podolsky undertook to perform the guard services in concert with Allied. Although the extent of any liability is strictly limited by the scope of the undertaking, when a landlord hires a security firm to provide security services, he may be liable for negligent hiring and when the landlord undertakes security measures himself, he has a duty of reasonable care in that undertaking. *Phillips v. Chicago Housing Authority*, 89 Ill. 2d 122, 127, 431 N.E.2d 1038 (1982). Here, genuine issues of material fact exist as to whether Podolsky was negligent in either regard. The ordinary meaning of the terms in the contract provide that Podolsky assumed the duty to decide upon and oversee the security measures that would be implemented by Allied. Thus, Podolsky and Allied shared responsibility for security and their duties coexisted.

Allied also voluntarily assumed a duty to protect Berg. The scope of duty on the part of Allied extended to the duty of exercising reasonable care in the performance of its contracted obligations, which included the duty to maintain a high level of visibility, the duty of constant vigilance, and the duty to keep unauthorized people from the property to reduce the risk of assault.

While the parties do not dispute the fact that there was a voluntary undertaking here, they disagree as to whether the voluntary undertaking included a duty to protect Berg from the danger of unforeseen criminal acts of third parties. Allied argues that its duty

was limited to the terms of the contract, which did not include the protection of tenants in the parking lot, particularly since it had no authority to control access to the parking lot and, in the event of such attack, had no authority to intervene. Podolsky notes that although there was a history of crime in the parking lot, there were no incidents of prior violent crimes. Therefore, Podolsky contends, the attack on Berg was not reasonably foreseeable and it had no duty to prevent it. Plaintiff acknowledges that the attack on Berg was the first of its kind suffered at the office complex, but deems irrelevant the issue of whether the risk was "foreseeable," since Podolsky knew of the risk as evidenced by the implementation of security measures for the protection of tenants.

The necessity that a criminal attack by a third party be foreseeable under the voluntary undertaking doctrine is less than clear. Although foreseeability can be established by evidence of prior criminal attacks on the premises, one court has indicated that the foreseeability exception is distinct from the voluntary undertaking doctrine. *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 526, 648 N.E.2d 285, 289 (1995) (foreseeability may be established through the avenue of the voluntary undertaking doctrine itself); but see *Shea v. Preservation Chicago, Inc.*, 206 Ill. App. 3d 657, 663, 565 N.E.2d 20, 24 (1990) (declining to adopt plaintiff's suggestion of two separate and independent bases for potential landlord liability for third-party criminal attacks and concluding that "[t]he proper inquiry is to determine whether, on a case-by-case basis, a particular landlord has retained control over or access to a portion of the property, and whether the circumstances demonstrate that the landlord, by retaining access to or control over the premises, assumed a duty to protect tenants against reasonably foreseeable third-party criminal attacks").

As will be explained below, we need not engage in an analysis of whether the attack in the present case was foreseeable. Were we to examine the foreseeability issue under our duty analysis, however, we would note that prior incidents of the same criminal activity are not a *per se* requirement to hold landlord liable for a third-party criminal attack on a tenant. *Shea v. Preservation Chicago, Inc.*, 206 Ill. App. 3d 657, 565 N.E.2d 20 (1990). We would further find instructive the supreme court's statement that "even though there had not been previous crimes of violence at [the location in question], where a plaintiff's injury results from the *same risk*, the existence of which required the exercise of greater care, unforeseeability of what exactly could develop and the extent of the injury or loss will not limit liability." (Emphasis added.) *Rowe v. State Bank*, 125 Ill. 2d 203, 227, 531 N.E.2d 1358, 1369 (1988).

The foreseeability analysis is unnecessary in the present case as it relates to the existence of a duty because both defendants expressly undertook a duty to reduce the risk of assault by the terms of their contractual agreement. While the issue of foreseeability may or may not be relevant to a determination of whether either defendant breached its duty, the existence and scope of the duty are determined by looking to the extent of the voluntary undertaking. Here, the facts indicate that both Allied and Podolsky knew of the present risk, since the security measures that were implemented specifically included reducing the risk from assault. Thus, as evidenced by the terms of their contract, the extent of their voluntary undertaking included protecting the plaintiff from an assault. Performing patrols of the parking lot was one of the activities contractually agreed upon by the defendants. As one court has noted, a "courtesy patrol's main reason for being was to protect both the employees and the patrons of the club from *all* types of harm that might befall them on the parking lots." (Emphasis added.) *Urbas v. Saintco, Inc.*, 264 Ill. App. 3d 111, 126, 636 N.E.2d 1214, 1224 (1994). In the instant case, there was a stronger indication in that the post orders specifically stated that the security guard's role was to reduce the risk of assault. The fact that Allied's personnel were not police and could not control access to the parking lot does not negate the existence of this duty. The evidence showed that the attacker fled at the sound of the horn; thus, whether the guards' presence would have been a sufficient deterrent, in spite of an inability absolutely to control access to the parking lot and an alleged lack of "authority to intervene" or act as police, is a question for the trier of fact. Material questions of fact exist as to whether the duty, which included maintaining high visibility and reducing the risk of assault, was breached and whether, as a proximate cause of any breach, the attack could have been prevented altogether or plaintiff's injuries reduced.

This case can be distinguished from this court's recent decision in *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill. App. 3d 490, 685 N.E.2d 985 (1997). In *Kolodziejzak*, the estate of a deceased employee brought a wrongful death action against a property management company, the security company it hired and other defendants after the deceased was killed during a criminal attack by a third party. The jury found in favor of the plaintiff and allocated 10% of the fault to the property management company, which appealed the trial court's denial of its motion for a directed verdict. Although the *Kolodziejzak* court

determined that the property management company was not liable, the decision was based on the court's opinion that the plaintiff had presented no evidence at trial that the defendant breached any duty. The court stated that the evidence revealed that the plaintiff had "presented *no* evidence to support her negligent hiring claim" (emphasis added) *(Kolodziejzak,* 292 Ill. App. 3d at 493) and, further, that the property management company reviewed the daily log reports, thus fulfilling "the *only specific* duty [it] undertook" (emphasis added) (292 Ill. App. 3d at 496). By contrast, Podolsky voluntarily undertook or assumed the general duty to protect the plaintiff from assaults; in so doing, it also undertook several other specific duties as evidenced by the contractual language in its lease with plaintiff's employer, as well as its contract with Allied.

The *Kolodziejzak* court also opined that "whether [the deceased's] death could have been prevented by the addition of another security guard is at best speculation and conjecture." *Kolodziejzak,* 292 Ill. App. 3d at 498. This statement, however, was made as part of the court's analysis under the "foreseeability" theory, after it found no duty under a voluntary undertaking analysis. Since we have determined that a duty did exist under the voluntary undertaking theory, as previously discussed, we need not engage in a foreseeability analysis.

■ In addition to the existence of a duty, a plaintiff must provide proof that an injury proximately resulted from the breach of that duty. *Arroyo v. Chicago Transit Authority,* 268 Ill. App. 3d 317, 325, 643 N.E.2d 1322 (1994). The issues of breach and proximate cause are factual matters for a jury to decide, provided there is a genuine issue of material fact regarding those issues. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.,* 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995). Here, there are sufficient issues of fact to allow a trier of fact to determine whether either defendant breached its duty of care. Commentary in a federal court case has acknowledged that cases that have addressed the general rule of police nonliability for failure to prevent crime have recognized the difficulties not only in preventing crime, but also in proving whether a crime could have been prevented. See *Figueroa v. Evangelical Covenant Church,* 879 F.2d 1427, 1437 n.11 (7th Cir. 1989). While this is not a case involving the police, plaintiff still must pass the hurdle of proving that her crime could have been prevented. Nevertheless, she should be allowed to try.

We hold that a voluntary undertaking in this case created an en-

forceable duty to plaintiff on the part of both defendants. Summary judgment is vacated and this cause is remanded.

Vacated and cause remanded.

BUCKLEY, P.J., concurs.

PRESIDING JUSTICE CAMPBELL, specially concurring:
I write separately to note that I am not in accord with the majority opinion's discussion of *Beck v. Stepp*, 144 Ill. 2d 232, 579 N.E.2d 824 (1991), and *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 549 N.E.2d 1262 (1990). However, as the majority opinion addresses the merits of the appeal, I also note my agreement with the majority's conclusion that there are material questions of fact regarding breach of duty and proximate causation that preclude the entry of summary judgment, given the facts and circumstances in this case.