THOMAS NELLES, Plaintiff-Appellee, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 1—00—1159

Opinion filed December 27, 2000.

Querrey & Harrow, Ltd., of Chicago (David E. Neumeister and Christopher Johnston, of counsel), for appellant.

Richard L. Lucas & Associates, Ltd., of Addison (Richard L. Lucas and Maxine R. Grief-Bless, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Defendant State Farm Fire & Casualty Company (State Farm) appeals from an order of the circuit court denying its motion to strike and dismiss portions of plaintiff Thomas Nelles' complaint. This matter is before us on interlocutory appeal pursuant to the following question certified by the trial court: "Whether Section 155 of the Illinois Insurance Code [(Code) (215 ILCS 5/155 (West 1998))] places a cap of $25,000 on statutory penalties awarded under that Section, or whether that Section allows a court to select one of the three enumerated penalties." For the reasons set forth below, our answer to the certified question is that section 155 places a limit of $25,000 on the amount of statutory penalties that may be awarded.

## STATEMENT OF FACTS

On September 1, 1992, Nelles was involved in an automobile accident. He settled with the driver of the other automobile for her policy limit of $100,000. Nelles had two policies of insurance with State Farm for underinsured benefits totaling $1.5 million. Nelles made a claim to State Farm for $1.4 million, his policies' limits minus the $100,000 settlement amount. State Farm initially offered to settle for $20,000. Because the parties could not agree on a settlement, the matter proceeded to arbitration. Nelles was awarded $774,000, which was reduced to $674,000 by virtue of the prior settlement.

Nelles filed a complaint against State Farm seeking attorney fees, costs, and statutory penalties pursuant to section 155 of the Code based on State Farm's alleged vexatious and unreasonable delay in settling his underinsured motorist claim. Nelles sought penalties in the amount of $654,000, the difference between what he was awarded at arbitration and what State Farm had offered to settle for prior to

arbitration. State Farm filed a motion to strike and dismiss those portions of Nelles' complaint in which Nelles alleged that he was entitled to statutory penalties in excess of $25,000. The trial court denied State Farm's motion, finding that it had discretion to impose penalties in an amount greater than $25,000. State Farm filed a motion to certify the question for interlocutory appeal, which the trial court granted. State Farm then filed its application for leave to appeal the certified question to this court, which we granted.

## ANALYSIS

■ Section 155 of the Code provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155(1) (West 1998).

The trial court found that the $25,000 identified in paragraph (b) of section 155 was not a maximum penalty amount. Based on the language of the statute, the court concluded:

"[T]here is no indication from the express language of this Section that the legislature intended a $25,000 maximum assessment for the statutory penalty allowed under this Section. Rather, Section 155(a) clearly provides that 'the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, **plus an amount not to exceed *any one of the following amounts*....*' "** (Emphasis in original.)

According to the trial court, the highlighted phrase allows a trial court to "decide which of the three options listed in this Section should be applied when determining the appropriate penalty."

State Farm contends that the trial court erred in holding that section 155 allows penalties in excess of $25,000 based on the plain language of the statute, the legislative history, and Illinois Supreme Court commentary on the section, all of which indicate that the legislature intended to limit statutory penalties to $25,000. Nelles

contends that the trial court properly determined that $25,000 was not a "cap." According to Nelles, none of the terms of section 155 are unclear and the trial court is permitted to choose any of the three sections in assessing penalties because there is nothing in the statutory language to limit the trial court in assessing penalties to any one of the sections. Nelles also contends that had the legislature intended to place a limit on the amount of statutory penalties, it could easily have added language to do so, but has failed to do so despite three amendments of the statute. Lastly, Nelles maintains that the legislative history relied upon by State Farm has been taken out of context. According to Nelles, the legislature, when it increased the amount in paragraph (b), was only addressing an amendment to that paragraph and was not placing a limitation on the section as a whole.

■ In construing a statutory provision, our primary goal is to ascertain and give effect to the legislature's intent. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820 (1994). We are to give the statutory words their plain and commonly understood meaning. *Panhandle Eastern Pipe Line Co. v. Environmental Protection Agency*, 314 Ill. App. 3d 296, 301, 734 N.E.2d 18 (2000). Every part of the statute must be considered together and every word or phrase must be given some reasonable meaning. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990). No clause is to be rendered superfluous or void. *Clay v. Kuhl*, 297 Ill. App. 3d 15, 20, 696 N.E.2d 1245 (1998). Where statutory language is ambiguous, we may consider other extrinsic aids, including legislative history. *Kunkel v. Walton*, 179 Ill. 2d 519, 534, 689 N.E.2d 1047 (1997). Construction of statutory language is a question of law, which we review *de novo. Paris v. Feder*, 179 Ill. 2d 173, 177-78, 688 N.E.2d 137 (1997).

■ We conclude that the language of section 155 of the Code is unambiguous and clearly places a limit of $25,000 on the amount of penalties that can be awarded. While we agree with Nelles that the trial court is free to choose, if necessary, which formula (paragraph (a) or (c)) it desires to use in setting a penalty amount, we believe that, pursuant to the statute's express language, "an amount not to exceed any one of the following amounts" preceding the three options, limits a trial court's award to a maximum of $25,000, as provided in paragraph (b). Paragraph (b) falls under the qualifying phrase "any one of the following." If the trial court awarded more than $25,000, the award would exceed "any one of the following," specifically, it would exceed the amount provided in paragraph (b). Moreover, as State Farm argues, if paragraph (b) was not intended to be a maximum, the legislature would have had no reason to include a fixed figure in the statute.

We believe that to read the statutory language in the manner urged by Nelles would render paragraph (b) superfluous or void. In other words, if penalties were allowed in an amount in excess of $25,000, paragraph (b) would serve no purpose and have no meaning because the amount awarded could and would "exceed any one of the following," *i.e.*, paragraph (b). Such an interpretation is contrary to the principles of statutory construction. Likewise, if paragraph (b) was not intended to be a maximum, there would be no valid reason for the legislature to increase the amount set forth in that paragraph from time to time to meet changing economic needs, as it has done by increasing the amount from $5,000 to $25,000. We believe that paragraphs (a) and (c) still serve a viable purpose and are not rendered superfluous by our decision. Trial courts may employ, based on the specific facts of the case before them, either of the formulas to fix the amount of a penalty where, for example, the court has determined that a penalty of $25,000 is excessive. Thus, our interpretation does not render any of the three options void.

Our conclusion is supported by the supreme court's remarks in *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 675 N.E.2d 897 (1996). In *Cramer*, the question before the court was not whether section 155 placed a $25,000 limit on the award of penalties but, rather, whether section 155 preempted a common law fraud cause of action against an insurance company for its unreasonable conduct in denying insurance claims. *Cramer*, 174 Ill. 2d at 515. In analyzing the issue, the *Cramer* court considered the purpose and history of section 155. The *Cramer* court noted that the purpose of section 155 was to provide a remedy for insurer misconduct. *Cramer*, 174 Ill. 2d at 519. Under the original statute, an award of attorney fees, up to a maximum of $500, was the only penalty allowed. The *Cramer* court then outlined the amendments since section 155 was enacted. In 1967, the cap on attorney fees was increased to $1,000. In 1977, the cap on attorney fees was removed altogether and the legislature then also provided for an award of penalties against the insurer. At this time, the "award was limited to a maximum of $5,000." *Cramer*, 174 Ill. 2d at 521. Section 155 was last amended in 1986, at which time the legislature increased the penalty amount. According to the *Cramer* court, "[t]he maximum allowable penalty under the statute was raised to $25,000." *Cramer*, 174 Ill. 2d at 521. The court noted later in its discussion of the preemption issue before it that the legislature specifically enacted section 155 to deal with a lack of an extracontractual remedy on the part of the insured for the insurer's bad faith and stated that "[t]he remedy provided by section 155 allows an extracontractual award and *specifically defines the limits of this award*." (Emphasis added.) *Cra-*

*mer*, 174 Ill. 2d at 527. See also *Cramer*, 174 Ill. 2d at 534-35 (Freeman, J., specially concurring) (stating three times that section 155 allows for *limited* penalties)).

While Nelles contends that the comments made by the *Cramer* court are *dicta, dicta* can be binding or, at the very least, persuasive authority. *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 649, 707 N.E.2d 1259 (1999); *Berg v. Allied Security, Inc.*, 297 Ill. App. 3d 891, 896, 697 N.E.2d 769 (1998). The *Cramer* majority clearly stated that penalties were limited to a *maximum* of, first, $5,000 and then later $25,000, and that section 155 limits the award of penalties. While these statements may be *dicta*, they are influential as to how the supreme court would interpret section 155. Moreover, while Nelles argues that no case since *Cramer* has cited to *Cramer* as authority that section 155 contains a limit, this argument is not well taken. First, the issue of whether section 155 contains a limit has presumably not arisen. Second, and more importantly, the fact that no cases have addressed the issue demonstrates that it is crystal clear that there is a limit of $25,000 on section 155 penalties and, therefore, there is no reason to raise the issue.

While we find that section 155 is clear and unambiguous, we note that our holding is further supported by the legislative history, which is absolutely clear that it was the legislature's intent to place a maximum on section 155 penalties. When the bill was addressed in the House in 1977, the following comments were made:

> "REPRESENTATIVE BENNETT: Thank you, Mr. Speaker. This Bill came out of the Insurance Laws Study Commission and simply changes the civil penalty for vexatious or unreasonable delay in the settlement of insurance claims to provide *** for the payment of costs to that person, attorney fees and *an amount not to exceed five thousand dollars.*" (Emphasis added.) 80th Ill. Gen. Assem., House Proceedings, June 24, 1977, at 64-65.

When an amendment to the proposed bill was discussed in the Senate in 1977, the following comment was made:

> "SENATOR RUPP: *** The amendment would provide that the insured in these instances would be entitled to attorney's fees plus either twenty-five percent of the amount the jury finds the insured entitled to [paragraph (a)] or fifteen thousand dollars [evidently paragraph (b)][1]." 80th Ill. Gen. Assem., Senate Proceedings, June 26, 1977, at 292.

Additionally, when the bill was being considered for amendment in 1985, the following comment was made:

---

[1]Presumably there was an amendment to limit the amount to $15,000 rather than $5,000, which amendment apparently was rejected.

"SENATOR D'ARCO: Thank you, Mr. President. Committee Amendment No. 1 *** *changes the limitation* on vexatious and unreasonable delay from a...a five thousand dollar *limit* to an increase of twenty-five thousand dollar *limit*." (Emphasis added.) 84th Ill. Gen. Assem., Senate Proceedings, May 14, 1985, at 7.

Senator D'Arco also commented:

"This bill *raises the limit* on punitive damages for unreasonable and vexatious delay by an insurance company from five thousand dollars to twenty-five thousand dollars. This was a compromise that we arrived at with the insurance companies. *I don't think it's enough but it's the best we could do right now.*" (Emphasis added.) 84th Ill. Gen. Assem., Senate Proceedings, May 24, 1985, at 224.

In the House, the following comments were made with respect to a proposed amendment to the bill:

"REPRESENTATIVE LAURINO: Madam Speaker and Members of the House, basically what Amendment #3 to *** Senate Bill 60 does is it *removes a cap* on the recovery for punitive damages incurred with an insurance company ***.

* * *

*** What it's doing, is taking the cap off, because the *cap is relatively small* when you consider the...the problems that people have in collecting the... What is due them, when a company wants to go belly up and not pay their debts. So, my ideas is [*sic*] you know on a 5,000 or a 25,000 dollar cap, it's a slap on the wrist and doesn't mean nothing." (Emphasis added.) 84th Ill. Gen. Assem., House Proceedings, June 19, 1985, at 92-93.[2]

These remarks indicate that $5,000 and then $25,000 was a maximum penalty. Nelles' argument that these remarks were meant only to limit paragraph (b), and not the entire section, is without merit. The last comments of Senator D'Arco negate Nelles' argument. If there was no limit on the entire section, Senator D'Arco would have no concern that $25,000 was an insufficient figure because a greater amount could be awarded under paragraph (a) or (c). Moreover, we note that there was an amendment in the House, which was rejected, to remove the limit altogether. Thus, we find that it was the legislature's intent to place a limit on the penalties available under section 155.

We briefly note that *Millers Mutual Insurance Ass'n v. House*, 286 Ill. App. 3d 378, 675 N.E.2d 1037 (1997), which Nelles relies on in support of his argument that $25,000 is not a limit and that a trial court may choose to use either paragraph (a), (b) or (c) in reaching its decision, is distinguishable from the present case. *House* did not address

---

[2]This amendment to remove the limit altogether was rejected. 84th Ill. Gen. Assem., House Proceedings, June 19, 1985, at 93.

the issue here of whether there was a limit on section 155 penalties. Rather, the *House* court addressed the issue of whether a trial court was required to choose the formula which rendered the least possible award. Unlike the *Cramer* court, the *House* court did not discuss, nor even mention, the word "cap," "limit," or "maximum." Rather, the court simply concluded that the trial court's award of $25,000 was not erroneous.

## CONCLUSION

For the reasons stated, our answer to the certified question is that section 155 provides for a maximum award of $25,000 in penalties.

Certified question answered; cause remanded.

HALL, P.J., and WOLFSON, J., concur.