THE TOWN OF SUGAR LOAF, Plaintiff-Appellee, v. THE ENVIRON-MENTAL PROTECTION AGENCY *et al.*, Defendants-Appellants (Areawide Management Coordination Board *et al.*, Defendants).

Fifth District   No. 5—98—0199

Opinion filed June 15, 1999.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for appellant Illinois Environmental Protection Agency.

Harry J. Sterling, P.C., of Fairview Heights, for appellant Louis I. Mund.

Tom D. Adams, of Adams & Huetsch, of Columbia, for appellant City of Columbia.

Robert J. Sprague, of Sprague & Urban, of Belleville, for appellee.

· JUSTICE WELCH delivered the opinion of the court:

In September 1995, the City of Columbia (Columbia) sought to obtain authority to provide sewer service to an area within its corporate boundaries (subject area) that was going to be developed. This area was within the facility planning area of the Town of Sugar Loaf (Sugar Loaf). A facility planning area is an area in which a

designated management authority, in this case Sugar Loaf, has the authority to plan, design, construct, own, and operate sewer facilities, including wastewater-treatment facilities. Columbia sought an amendment to the state water quality management plan to transfer the subject area from Sugar Loaf's facility planning area to its own. Sugar Loaf objected.

Both parties submitted evidence to the Illinois Environmental Protection Agency (IEPA), the agency charged with maintaining the state water quality management plan. The IEPA, in a letter dated July 25, 1996, approved the transfer of the subject area from Sugar Loaf's facility planning area to Columbia's facility planning area.

On October 11, 1996, Sugar Loaf filed, in the circuit court of St. Clair County, an amended complaint for the review of the IEPA decision by writ of *certiorari*. Columbia and the IEPA filed answers to the amended complaint. On June 19, 1997, the court entered an order of *certiorari* directing the IEPA to produce its records and files in the case for review.

Upon receipt of the record, the parties filed motions for summary judgment in their favor. On December 31, 1997, the court entered summary judgment in favor of Columbia and the IEPA, effectively affirming the decision of the IEPA in favor of Columbia.

On January 20, 1998, Sugar Loaf filed a motion asking the court to reconsider its judgment. On March 17, 1998, the court granted Sugar Loaf's motion to reconsider, reversed itself, and entered summary judgment in favor of Sugar Loaf, effectively reversing the decision of the IEPA. Columbia, Louis Mund, and the IEPA appeal.

The first argument we address on appeal is raised by appellants by a motion to dismiss and concerns the question of our jurisdiction to hear this appeal. Appellants argue that Sugar Loaf's motion to reconsider was deficient as a matter of law and was therefore not the type of postjudgment motion that tolls the time for filing a notice of appeal. Accordingly, appellants argue, Sugar Loaf's notice of appeal was not timely filed and this appeal should be dismissed for lack of jurisdiction.

■ Supreme Court Rule 303(a)(1) provides that a notice of appeal must be filed "within 30 days after the entry of the final judgment appealed from, or, if a timely post[ ]trial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending post[ ]trial motion." 134 Ill. 2d R. 303(a)(1). The timely filing of a notice of appeal is jurisdictional. See *J.D. Marshall International, Inc. v. First National Bank*, 272 Ill. App. 3d 883, 888 (1995).

In the instant case, the notice of appeal was not filed within 30

days of the entry of the summary judgment in favor of Columbia. Instead, within those 30 days Sugar Loaf filed a motion to reconsider. Sugar Loaf's motion to reconsider alleged as grounds for the reconsideration of the order granting Columbia's motion for summary judgment only that said order was contrary to the law, that said order was contrary to the evidence, and that the decision of the administrative agency was contrary to the manifest weight of the evidence and not supported by the evidence. The motion to reconsider asked the court to enter an order setting aside the summary judgment and for such other and further relief as the court deemed just and equitable. Appellants argue that this motion lacked the specificity required by case law and is therefore not a valid postjudgment motion within the meaning of Supreme Court Rule 303(a)(1).

■ Section 2—1203(a) of the Code of Civil Procedure (735 ILCS 5/2—1203(a) (West 1996)) provides that, in all cases tried without a jury, any party may file a motion for a rehearing or a retrial or modification of the judgment or to vacate the judgment or for other relief. Our courts have consistently held that a motion to reconsider is a postjudgment motion within the meaning of section 2—1203(a) in that it seeks "other relief" which is similar in nature to the relief specified in section 2—1203(a). See *Beck v. Stepp*, 144 Ill. 2d 232, 241 (1991); *Sho-Deen, Inc. v. Michel*, 263 Ill. App. 3d 288, 293 (1994). However, appellants argue that our supreme court has held that not only must a postjudgment motion seek the kind of relief enumerated in section 2—1203(a), but it must also contain sufficient specificity with regard to the points of error urged in support of the prayer for relief.

In *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 346 (1990), our supreme court held that a motion for leave to file an amended complaint was not a valid postjudgment motion capable of extending the time for filing a notice of appeal under Supreme Court Rule 303(a)(1). Not only did the motion not seek the kind of relief enumerated in section 2—1203, it did not contain sufficient specificity to allow the trial court to review its decision. See *Andersen*, 133 Ill. 2d at 347. Because the plaintiff's motion neither requested modification or vacation of the judgment nor offered *any* points warranting such relief, it was not a valid postjudgment motion. See *Andersen*, 133 Ill. 2d at 347. Accordingly, the appeal was dismissed for lack of jurisdiction.

In *Beck v. Stepp*, 144 Ill. 2d 232 (1991), in a letter addressed to the trial court following summary judgment, a party's attorney stated: "I understood the Court to announce that it was denying the Motion, but the Order states that the Motion was allowed. Thank you for your at-

tention to this matter." The supreme court held that the letter did not constitute a valid postjudgment motion within the meaning of Supreme Court Rule 303(a)(1) and section 2—1203(a) of the Code of Civil Procedure. The court held that a postjudgment motion must include a request for at least one of the forms of relief specified in section 2—1203(a). *Beck*, 144 Ill. 2d at 240. In addition, relying on *Andersen*, the court held that a postjudgment motion must allege grounds that would warrant the granting of the relief requested. *Beck*, 144 Ill. 2d at 241. The letter to the judge failed in both these respects and could not extend the time for filing a notice of appeal.

These supreme court cases, on which appellants rely to argue that Sugar Loaf's motion to reconsider was insufficiently specific to extend the time for filing a notice of appeal, have been variously followed, distinguished, and rejected by this appellate court. In *Sho-Deen, Inc. v. Michel*, 263 Ill. App. 3d 288 (1994), the second district of this court followed the holdings in *Andersen* and *Beck* to dismiss an appeal for lack of jurisdiction. In *Sho-Deen, Inc.*, the appellant had filed a motion for reconsideration and other relief that stated simply, "The defendant John S. Michel, by and through his undersigned counsel[,] respectfully moves that the court reconsider its order entered on December 7, 1992[,] denying him homestead." This motion was denied and the appellant filed a notice of appeal. The appellate court held that, although the motion did in a cursory fashion request a form of relief cognizable under section 2—1203(a) and Supreme Court Rule 303(a)(1), the motion failed to state any legal or factual basis upon which to afford the trial court an opportunity to assess its earlier decision. *Sho-Deen, Inc.*, 263 Ill. App. 3d at 292. The court held that the specificity requirement mentioned in *Andersen* and *Beck* is not limited to stating the type of relief requested; rather, it extends to the expression of points warranting such relief. *Sho-Deen, Inc.*, 263 Ill. App. 3d at 293. Because the appellant's motion lacked the specificity required by *Andersen* and *Beck*, the court held that it was not a valid postjudgment motion.

The court cautioned, however, as follows: "Our holding *** should not be construed as imposing hypertechnical drafting requirements governing post[ ]trial motions. The deficiency in the present motion is that it is totally devoid of *any* indication of points allegedly warranting relief." (Emphasis in original.) *Sho-Deen, Inc.*, 263 Ill. App. 3d at 293. The court was concerned that "in the absence of a requirement that a post[ ]trial motion contain some element of substance, a *pro forma* motion for reconsideration could be utilized as a mere pretext by which a party could unilaterally extend the time requirements for filing its notice of appeal." *Sho-Deen, Inc.*, 263 Ill. App. 3d at 293.

In *Berg v. Allied Security, Inc., Chicago*, 297 Ill. App. 3d 891, 896

(1998), *appeal allowed*, 179 Ill. 2d 576, 705 N.E.2d 433 (1998), the first district of this court declined to follow the supreme court's decisions in *Andersen* and *Beck*, finding the language therein relating to specificity in postjudgment motions to be erroneous judicial *dicta* that it need not follow. The court pointed out that section 2—1202 of the Code of Civil Procedure, which deals with postjudgment motions following a *jury* trial, explicitly requires that the motion "contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired" (735 ILCS 5/2—1202 (West 1996)). *Berg*, 297 Ill. App. 3d at 895-96. On the other hand, the filing of a postjudgment motion in a nonjury case is not required at all. See *Berg*, 297 Ill. App. 3d at 894-95. The court held that section 2—1203 gives a litigant in a nonjury case the right to request that a judge reconsider his ruling; the statute does not impose the additional burden of requiring the litigant to specify the grounds. See *Berg*, 297 Ill. App. 3d at 895. The court held that had the legislature wanted to require such specificity in postjudgment motions filed in nonjury cases, it would have included the language as it did for the motions filed in jury cases. *Berg*, 297 Ill. App. 3d at 895. Accordingly, the appellate court found the judicial *dicta* of *Andersen* and *Beck* to be erroneous and declined to follow it.

In *Mendelson v. Ben A. Borenstein & Co.*, 240 Ill. App. 3d 605, 615 (1992), the appellant had filed a motion for the reconsideration of a summary judgment, indicating that he would file a memorandum in support thereof. In finding the motion sufficient to toll the time for filing a notice of appeal, this court distinguished it from *Andersen* and *Beck* on the basis that the supporting memorandum would have contained the required specificity, satisfying the requirements of *Andersen* and *Beck*.

As in *Mendelson*, we find the instant case to be distinguishable from *Andersen* and *Beck*. We find the postjudgment motion in the instant case to contain sufficient specificity to meet the requirements of *Andersen* and *Beck*. While we recognize that the motion to reconsider could have been more specific by setting forth the precise ways in which the trial court's judgment was contrary to the law or contrary to the manifest weight of the evidence, in the case at bar such a requirement would have turned a mere motion into the equivalent of a brief. We agree with the court's caution in *Sho-Deen, Inc.*, 263 Ill. App. 3d at 293, that this court should not impose hypertechnical drafting requirements on postjudgment motions and that only a motion that is "totally devoid of *any* indication of points allegedly warranting relief" (emphasis in original) should be found insufficient. We think the motion in the instant case is sufficiently specific to ap-

prise the trial court of the error alleged. Should it deem it necessary, the trial court is free to set the motion for oral argument or request the submission of briefs.

■ The next argument we address is raised by appellant IEPA. The IEPA argues that its decision is not reviewable under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)) or through a writ of *certiorari.* The parties all agree that review of the decision of the IEPA in this cause is not available through the Administrative Review Law. While section 41 of the Environmental Protection Act (415 ILCS 5/41 (West 1996)) provides for judicial review under the Administrative Review Law from certain decisions of the Pollution Control Board, there is no provision in the Environmental Protection Act for review of decisions of the IEPA on petitions to amend the Illinois water quality management plan. Within the context of the Environmental Protection Act, the legislature has expressly limited the application of the Administrative Review Law to specific enumerated actions taken by the Pollution Control Board, effectively excluding actions taken by the IEPA. See *National Marine Service Inc. v. Illinois Environmental Protection Agency*, 120 Ill. App. 3d 198, 209 (1983). IEPA decisions, apart from those made by the Pollution Control Board, are not reviewable under the Administrative Review Law. See *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 61 (1995).

■ We turn then to the question of whether the IEPA's decision is reviewable through the common law writ of *certiorari.* The common law writ of *certiorari* was developed to provide a means whereby a petitioner who was without an avenue of appeal or direct review could obtain limited review over an action by a court or other tribunal exercising quasi-judicial functions. See *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427 (1990). The purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, from that record alone, whether that body proceeded according to the applicable law. See *Stratton*, 133 Ill. 2d at 427. Where the Administrative Review Law has not been expressly adopted, the writ of common law *certiorari* survives as an available method of reviewing the actions of agencies and tribunals exercising administrative functions. See *Stratton*, 133 Ill. 2d at 427.

The standards of review under a common law writ of *certiorari* are essentially the same as those under the Administrative Review Law: courts generally do not interfere with an agency's discretionary authority unless the exercise of that discretion is arbitrary and capricious or the agency action is against the manifest weight of the evidence. See *Hanrahan v. Williams*, 174 Ill. 2d 268, 272-73 (1996).

Relying on *Hanrahan v. Williams*, 174 Ill. 2d 268 (1996), the IEPA

argues that its decision is not reviewable even through a writ of *certiorari* because the language of the Environmental Protection Act commits the agency decision on petitions to amend the Illinois water quality management plan to unreviewable agency discretion because the act contains no standards, goals, or criteria by which a court may evaluate agency action. The IEPA argues that the broad discretion granted to it when making these types of decisions does not allow for judicial review because there are no objective criteria that would allow a reviewing court to determine if the agency's decision was contrary to the law or against the manifest weight of the evidence.

In *Hanrahan*, a prisoner sought the issuance of a common law writ of *certiorari* to obtain the review of a decision of the Prisoner Review Board denying him parole. On appeal, our supreme court held that decisions of the Prisoner Review Board are not reviewable through a common law writ of *certiorari*. The court held that while most agency actions are presumed reviewable, no presumption arises if there is a statutory bar to review or if statutory language commits the agency decision to unreviewable agency discretion. *Hanrahan*, 174 Ill. 2d at 273. The court found one factor of particular importance in determining whether review is allowed—whether the statute contains standards, goals, or criteria by which a court may evaluate agency action. *Hanrahan*, 174 Ill. 2d at 273. Judicial review is precluded if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. See *Hanrahan*, 174 Ill. 2d at 273-74.

The supreme court held that the statute and rules relating to the Prisoner Review Board did not contain standards for release on parole sufficiently objective to allow a court to evaluate the Board's decision to deny parole. *Hanrahan*, 174 Ill. 2d at 276. Accordingly, review through a common law writ of *certiorari* was not appropriate. The court pointed out that its decision was supported by the general nature of parole-release decisions, which are often based on subjective factors and predictions rather than objective factors, and pointed out that this makes parole-release decisions different from other administrative agency decisions, where the agency exercises wide discretion subject to legislative limits. *Hanrahan*, 174 Ill. 2d at 278-79.

■ While the Environmental Protection Act does not provide criteria or standards relating to the IEPA's decisions on petitions to amend the water quality management plan, the rules and regulations of the IEPA do. While the IEPA has broad discretion in ruling on such petitions, the criteria and standards to be applied are not wholly subjective as is the case with parole-release decisions. For example, the petition for amendment must include such objective materials as

descriptions of the existing and proposed future uses of the geographic area that is the subject of the proposed revision, as well as adjacent areas, an assessment, with supporting factual information, of the environmental impacts that might result from the proposed revision, including existing and proposed wasteloads and facilities to collect, transport, and treat such wasteloads, and an assessment of the present-worth analysis of alternatives to the proposed revision. See 35 Ill. Adm. Code § 351.202 (1996). In making its decision, the IEPA is to consider all facts and circumstances bearing upon the reasonableness of the request, including the environmental effects and the cost effectiveness of achieving water-quality goals. See 35 Ill. Adm. Code § 351.402 (1996). While the IEPA is still vested with broad discretion in making these decisions, its decision is based on objective factors and standards that allow a circuit court to evaluate the agency action. Because the rules and regulations of the IEPA provide a meaningful standard against which a circuit court may judge the agency's exercise of its discretion, review through a common law writ of *certiorari* is appropriate. Furthermore, the Environmental Protection Act and the federal Clean Water Act of 1977 (33 U.S.C. § 1251 *et seq.* (1994)) provide standards, goals, and criteria by which a court can evaluate the decisions of the IEPA on petitions to amend the water quality management plan.

Finally, we point out that the review by a common law writ of *certiorari* of IEPA decisions on petitions to amend the water quality management plan has been approved by this court in previous cases. See *Jurcak v. Environmental Protection Agency*, 161 Ill. App. 3d 48, 51 (1987); *Citizens Utilities Co. v. Pollution Control Board*, 265 Ill. App. 3d 773, 774 (1994).

We turn now to the final issue on appeal: whether the decision of the IEPA granting Columbia's petition to amend the water quality management plan is against the manifest weight of the evidence. We are reminded that this matter came before the circuit court on review by writ of *certiorari*. In a common law *certiorari* proceeding, the trial court determines from the record alone whether there is any evidence fairly tending to support the order reviewed, and the court cannot set aside the order unless it is palpably or manifestly against the weight of the evidence. See *Jones v. Lazerson*, 203 Ill. App. 3d 829, 834 (1990); *Zunino v. Cook County Comm'n on Human Rights*, 289 Ill. App. 3d 133, 137 (1997). A court reviewing an agency's decision will not reweigh the evidence. *Maddox v. Williamson County Board of Commissioners*, 131 Ill. App. 3d 816, 822 (1985). As in all administrative review cases, this court gives no deference to the decision of the trial court but reviews that decision *de novo*. See *Pontiac Lodge No. 294,*

*A.F. & A.M. v. Department of Revenue*, 243 Ill. App. 3d 186, 192 (1993). Accordingly, we apply the same standard of review to the determinations of the IEPA as did the trial court, and we review the record of the agency proceedings to see whether there is any evidence fairly tending to support its decision or whether its decision is manifestly against the weight of the evidence. We note that a decision is against the manifest weight of the evidence if the opposite result is clearly evident, plain, or indisputable from a review of the evidence. See *Tate v. Pollution Control Board*, 188 Ill. App. 3d 994, 1022 (1989).

On July 25, 1996, the IEPA sent to Columbia a final approval letter granting Columbia's petition to amend the water quality management plan to reflect the transfer of the subject area from the Sugar Loaf facility planning area to the Columbia facility planning area. The letter indicated that Sugar Loaf's objection to the amendment was overruled because its alternative plan to provide wastewater service to the subject area was not implementable as it failed to address the lack of capacity at the Village of Dupo waste-treatment plant to service the 20-year forecasted wastewater flow from the subject area.

At Sugar Loaf's request, on August 14, 1996, the IEPA sent a letter to Sugar Loaf, clarifying its decision changing the facility planning areas. The letter set forth the following reasons for the IEPA's decision:

"1. The area in question is within the corporate limits of Columbia, who has sole zoning authority. This is significant when considering density and land use development, ability to implement planning, and control of right-of-way and easements.

2. [Discharge monitor reports] and the [national pollution discharge elimination system] [p]ermit identify a plant at Dupo with a .6 mgd design average flow. No comments on the ongoing expansion of the Dupo [sewage treatment plant] were submitted as part of the review record until after our decision. Until completion of construction, sign off on final inspection, and issuance of a new [permit], the facility is still rated at .6 mgd. Comments received by Dupo did not identify ongoing plant expansion activities.

3. The expressed desire of the developer of the area was to receive service by Columbia.

4. Cost-effective studies of total construction costs (including developers [*sic*] costs) supported the City of Columbia as providing the most cost-effective service."

■ We have reviewed the record of the proceedings before the IEPA and conclude that its findings and decision as set forth above are supported by the evidence. The evidence is undisputed that the Village of Dupo waste-treatment plant, which services Sugar Loaf, currently has insufficient capacity to service the proposed new development

should the area remain within Sugar Loaf's facility planning area. While there is some indication in the record that the Village of Dupo is expanding its plant capacity and could accommodate Sugar Loaf's increased waste in the future, this was never completely documented. There is also evidence that the cost to the developer would be less if the area is transferred to the Columbia facility planning area and that Columbia's proposal to provide service is more cost effective than that of Sugar Loaf. While the evidence is conflicting in some respects, it is not the province of this court to reweigh the evidence. See *Maddox v. Williamson County Board of Commissioners*, 131 Ill. App. 3d 816, 822 (1985). We cannot find that a conclusion opposite to that reached by IEPA is clearly evident, plain, or indisputable. See generally *Tate v. Pollution Control Board*, 188 Ill. App. 3d 994, 1022 (1989). Accordingly, we reverse the judgment of the circuit court of St. Clair County in favor of Sugar Loaf and enter judgment in favor of Columbia, Mund, and the IEPA.

For the foregoing reasons, the judgment of the circuit court of St. Clair County, entered March 17, 1998, is hereby reversed, and judgment is entered in favor of Columbia, Mund, and the IEPA.

Motion to dismiss denied; circuit court reversed; judgment entered.

HOPKINS and MAAG, JJ., concur.