WINSTON KO *et al.,* Plaintiffs-Appellants, v. ELJER INDUSTRIES, INC., *et al.,* Defendants-Appellees.

First District (1st Division)    No. 1—95—3114

Opinion filed March 4, 1997.

William H. Ford III, Claudia J. Serviss, and George H. Kim, all of Ford Law Firm, of Los Angeles, California, for appellants.

Wilber C. Boies, Mercedes A. Laing, and Deborah Halstenberg, all of McDermott, Will & Emery, of Chicago, for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

The plaintiffs, Winston and Dorothy Ko (the Kos), allege that they, as guarantors of a promissory note, were defrauded by the corporate defendants, Eljer Industries, Inc., Eljer Manufacturing, Inc., Household Manufacturing, Inc., Household International, Inc., and the individual defendants, Scott G. Arbuckle (Arbuckle), and Robin G. Munden (Munden).

On August 1, 1995, pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)), the circuit court granted the motion of defendants Eljer Industries, Inc., Eljer Manufacturing, Inc. (formerly Household Manufacturing, Inc.), Scott G. Arbuckle and Robin G. Munden and dismissed all of the Kos' claims against them. On August 10, 1995, the court entered an order and final judgment, which dismissed all claims against all defendants, including Household International, Inc. This appeal was taken from those final orders. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The chronology of events in this case is long and tortuous. On September 20, 1984, Simonds Cutting Tools N.A., then a subdivision of Household Manufacturing, Inc., which is now Eljer Manufacturing, Inc., entered into an agreement with the Kos' family-owned company, Kowin Development Corp. The intent of the agreement was to create a company to manufacture steel cutting files and other tools. The new corporation was called Kowin-Simonds, Inc. Approximately two months later, Kowin Development Corp. transferred half of its interest in the new company to Croft Investment Ltd.

In 1985, Kowin-Simonds, Inc., entered into a joint venture contract with Beijing Steel Files Plant of China to invest in a file manufacturing plant in China. Kowin-Simonds borrowed $2,500,000 from the Bank of America, evidenced by two promissory notes of $1,250,000 each. In November 1985, the Kos executed a continuing guaranty of one of the notes. Household Manufacturing guaranteed the other note.

The Kos allege that Household Manufacturing represented from March 1987 onward that it could purchase millions of files from the joint venture and would do so but for the alleged inability of the joint venture to manufacture files of quality and in the numbers required in the joint venture agreement.

The Kos further allege that Simonds Industries, the successor in interest to Household Manufacturing, submitted ostensible purchase orders, asserted its willingness to purchase files, and made other representations to conceal the facts from the Kos.

The Kos further have alleged that the machinery for the manufacture of the files, which was sold to Kowin-Simonds by Household Manufacturing for $3,500,000, had a market value of only $600,000, was unfit for its intended purpose, could not be installed or operated by Chinese personnel, and had never been tested.

Based upon these and other misrepresentations, both oral and written, which the Kos alleged induced them to enter into the agreement with the Household entities, Kowin Development Corp., individually and derivatively on behalf of Kowin-Simonds, brought suit in the federal District Court for the Central District of California on March 17, 1988, against Household Manufacturing and Simonds Cutting Tools, N.A. The complaint alleged securities fraud, fraud and deceit, breach of contract, breach of fiduciary duty, constructive fraud, negligent misrepresentation and subrogation.

In December 1989, the district court granted Household Manufacturing's motion to compel arbitration and stayed all legal proceedings. The parties proceeded to arbitration in Chicago.

On January 31, 1990, Kowin-Development was dissolved. The Kos succeeded to the rights and interests of Kowin-Development with regard to the federal court litigation. Also in January 1990, the loan to Kowin-Simonds was called by the Bank of America. In March 1990, the Kos allege that they were forced to personally execute a new note to the Bank of America for the remaining $625,000 of principal. The Kos were required to give, as security on this new note with an increased interest rate, a second trust deed on their Commodore Hotel property. On December 21, 1990, the new note matured, requiring the Kos to sell the Commodore Hotel property at a loss of $2 million.

On October 30, 1992, the arbitrator rendered his award in favor of Kowin Development Corp. and the Kos as successors in interest. On March 1, 1993, the federal District Court for the Northern District of Illinois affirmed in part the arbitrator's decision. The Seventh Circuit Court of Appeals also affirmed in part the award. The United States Supreme Court denied a petition for *certiorari*. The Kos ultimately were awarded over $10 million in damages.

On May 24, 1993, the complaint in the federal action in California was amended to name the Kos as individual plaintiffs and to name additional defendants, including Household International, Inc., Eljer Industries, Inc., Eljer Manufacturing, Inc., Arbuckle and

Munden. The complaint set forth six causes of action for securities fraud, and one each of RICO, fraud and deceit, breach of fiduciary duty, constructive fraud and negligent misrepresentation. Thereafter, on November 2, 1993, the federal securities claims and RICO claims were dismissed as time barred. The district court declined to exercise pendent jurisdiction as to the remaining state claims and dismissed them without prejudice. The Kos did not appeal the district court's order.

The Kos then filed, on October 13, 1994, an action in the circuit court of Cook County against Eljer Industries, Inc., Eljer Manufacturing, Inc., Household Manufacturing, Inc., and Household International, Inc., alleging a variety of state law causes of action. The Kos then dismissed this action voluntarily on October 26, 1994. On the same day, they filed another action against the same defendants, but added Arbuckle and Munden as defendants.

In January 1995, defendants filed motions to dismiss. In August 1995, the circuit court dismissed this action on the bases of collateral estoppel, *res judicata*, the time bar of the statute of limitations, as well as section 13—210 (735 ILCS 5/13—210 (West 1994)) and section 13—217 of the Illinois Code of Civil Procedure (735 ILCS 5/13—217) (West 1994)). For the following reasons, we affirm the judgment of the circuit court.

## ANALYSIS

■ Our review of the trial court's grant of defendants' motions under section 2—619 is *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993). When a defendant makes a motion to dismiss under section 2—619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85, 651 N.E.2d 1132, 1139 (1995). A reviewing court may affirm a dismissal granted pursuant to section 2—619 on any grounds supported by the record, regardless of the trial court's reasons. See *Nagy v. Beckley*, 218 Ill. App. 3d 875, 878, 578 N.E.2d 1134, 1136 (1991).

The Kos raise six issues on appeal as grounds for reversal:

(1) Whether collateral estoppel operates to bar them from litigating the state claims even though the district court declined to exercise jurisdiction, rather than actually decide the merits of those claims;

(2) When the causes of action of the Kos individually accrued;

(3) Whether California or Illinois statutes of limitations apply;

(4) Whether defendants are equitably estopped from asserting a statute of limitations defense;

(5) Whether this action is barred by operation of section 13—217; and

(6) Whether plaintiffs' causes of action were tolled as to any individual defendants between the time of accrual and the time of filing of the Illinois complaint.

We will consider each of these issues in the order listed above.

## Collateral Estoppel

■ The first issue plaintiffs raise is whether collateral estoppel operates to bar them from litigating the state claims even though the district court declined to exercise jurisdiction, rather than actually decide the merits of those claims. We agree with the plaintiffs that collateral estoppel does not bar this action under the instruction of *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 499 N.E.2d 1373 (1986), where there was no final adjudication on the merits by the district court. "[T]he parties are bound not by issues which could have been litigated but only by those which were litigated ***." *City of Burbank v. Glazer*, 76 Ill. App. 3d 294, 298, 395 N.E.2d 97, 100 (1979). In the present case, although the issue of accrual date was litigated for purposes of the federal law claims and although the reasoning may be relevant to the issue of the accrual date for purposes of the state law claims, there was no ruling on the merits of any state law claim that would trigger collateral estoppel.

## Accrual of Cause of Action

The second issue the Kos raise is when their individual causes of action accrued. The circuit court below concluded that the accrual date for the Kos' causes of action was March 17, 1988. This decision was based on the court's determination that there could be no question that the Kos knew, at least by that date, that this injury was wrongfully caused because the Kos caused Kowin to file suit on that date. Therefore, despite our disagreement with the trial court's finding of collateral estoppel, we agree with the reasoned analysis of the court's independent determination as to when the cause of action accrued.

In determining when the Kos' causes of action accrued, the circuit court found persuasive and agreed with the reasoning of the district court in the federal litigation as delineated in the order entered by that court. The district court in California had concluded that the corporate predecessor to the Kos, to whose rights the Kos have succeeded, knew of an injury as of March 17, 1988, when the original lawsuit was filed in district court in California alleging securities fraud as well as state law causes of action for fraud and deceit, constructive fraud, negligent misrepresentation, and breach of fiduciary duty. The Kos contend on appeal that the district court's comment as to when the cause of action accrued for purposes of the state

law claims was unnecessary and, therefore, essentially *obiter dictum.* Because "*[d]icta* is a much maligned legal expression" (*Wolf v. Meister-Neiberg, Inc.,* 194 Ill. App. 3d 727, 730, 551 N.E.2d 353, 355 (1990), *aff'd,* 143 Ill. 2d 44, 570 N.E.2d 327 (1991)), we believe it is incumbent upon us to offer our own *obiter dictum.*

"It is often stated that all except that which is necessary to the decision of a case is *obiter dictum.* This is misleading, for nothing but the bare finding of the court is absolutely necessary to its decision as between the parties. For the purpose of legal precedent, we must look to all the issues presented by the facts of the case and to the legal principles applied by the court in the final determination of those issues. Our supreme court has made a distinction between judicial *dictum* and *obiter dictum,* meaning that a legal principle deliberately passed upon by a court establishes a precedent." *Larson v. Johnson,* 1 Ill. App. 2d 36, 40-41, 116 N.E.2d 187, 189 (1953), citing *Scovill Manufacturing Co. v. Cassidy,* 275 Ill. 462, 470, 114 N.E. 181 (1916).

■ "*Obiter dicta,* even of the supreme court, are not binding authority, although they may be persuasive." *People v. Dylak,* 258 Ill. App. 3d 141, 143, 630 N.E.2d 164, 165-66 (1994). "The term *** *obiter dictum* *** means a remark or opinion uttered by the way. *** [A]s a general rule [it] is not binding as authority or precedent within the *stare decisis* rule. [Citations.] On the other hand, an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if *dictum,* is a judicial *dictum.* [Citations.] And further, a judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous. [Citations.]" *Cates v. Cates,* 156 Ill. 2d 76, 80, 619 N.E.2d 715, 717 (1993).

In the federal litigation, as in the present litigation, the plaintiffs vigorously argued that the date of discovery of their action corresponded to the date they actually incurred certain damages. The district court rejected their arguments, and it is clear from the order of dismissal that the parties argued and the court considered the elements necessary for determining whether a cause of action had accrued under Illinois law. The court stated that "there can be no dispute that Plaintiffs knew of their injury no later than the filing of the original complaint in March, 1988." Therefore, the district court's comment as to when the cause of action accrued for purposes of the state law claims was not a mere *obiter dictum,* as plaintiffs contend but, rather, a judicial *dictum* entitled to much weight and which should be followed. Even if we accept the Kos' characterization of the district court's decision as "*obiter dictum,*" we would nevertheless accept the reasoning as highly persuasive.

We recognize that this case could be distinguished from those cited above in view of the fact that the judicial *dictum* was a comment (1) proffered by a federal court, (2) in an order and not a published opinion, and (3) that stated a legal proposition applying to the undisputed facts of this case, but not necessarily a "rule." We need not address these distinctions, however, since our decision is not solely based upon the judicial *dictum*, but also on our own application of Illinois law to the undisputed facts of this case.

■ The circuit court in this action, applying the Illinois rule that a cause of action accrues when a person knows or should know (1) of his/her injury, and (2) that the injury was wrongfully caused (*Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874 (1981)), determined that the Kos' state claims accrued on March 17, 1988. We agree.

The Kos cannot claim that their corporate predecessor, the family-owned Kowin Development Corp., filed the very same causes of action in California as in Illinois but that they did not know at that time both that they had been individually injured and that the defendants caused the injury. Such a contention ignores the long and arduous history of this litigation. The same underlying facts and the same causes of action are pursued here. The Kos cannot assert a lack of knowledge in Illinois as to what they clearly and forcefully asserted in California in 1988 caused Kowin considerable injury. We conclude that the accrual date for the Kos' causes of action was March 17, 1988.

## Section 13—210

■ Plaintiff's third contention is that the Illinois statutes of limitations apply here. They argue that the trial court erred in applying the shorter California statutes of limitations pursuant to the Illinois "borrowing statute," which provides:

> "Foreign limitation. When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 ILCS 5/13—210 (West 1994).

We agree with the Kos that the Illinois borrowing statute does not apply here. Munden is an Illinois resident and the statute is only applied when none of the parties are Illinois residents. See *LeBlanc v. G.D. Searle & Co.*, 178 Ill. App. 3d 236, 237, 533 N.E.2d 41, 42 (1988).

We do, however, agree with the circuit court that defendant Eljer Manufacturing, formerly Household Manufacturing, is not a resident of Illinois. Though authorized to do business in Illinois, Eljer/Household is a Delaware corporation. The clear rule enunciated in

*LeBlanc*, 178 Ill. App. 3d at 240-41, 533 N.E.2d at 44, is that nonresident corporations, even though authorized to do business in Illinois, are not residents for purposes of the "borrowing statute." Nevertheless, since Munden is a resident, the Illinois statutes of limitation apply in this case.

The first four counts of the Kos' five-count amended complaint include fraud and deceit (count I); constructive fraud (count II); negligent misrepresentation (count III); and breach of fiduciary duty (count IV). Under Illinois law, each of these counts is governed by the five-year statute of limitations contained in section 13—205. Count V of the complaint alleges a cause of action under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)), section 10a(e) of which contains a three-year statute of limitations.

## Equitable Estoppel

■ The fourth issue raised by the plaintiffs is whether the defendants are equitably estopped from asserting a statute of limitations defense. The Kos' attempt to assert equitable estoppel must fail. The Kos contend that their situation is analogous to that of the plaintiff in *Witherell v. Weimer*, 85 Ill. 2d 146, 421 N.E.2d 869 (1981). There, plaintiff's physicians repeatedly assured her that her medical condition was not caused by the contraceptive they had prescribed to her. The plaintiff therefore delayed filing suit against them and the drug manufacturer until the statute of limitations had expired. *Witherell* is readily distinguishable from this case. There is no conduct here that is akin to that present in *Witherell*. The Kos can hardly claim they were lulled into delaying suit, since they filed a lawsuit in March 1988.

## Section 13—217

■ The fifth issue plaintiffs raise is whether this action is barred by operation of section 13—217 of the Illinois Code of Civil Procedure. Section 13—217 provides as follows:

"Reversal or dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict in favor of the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, or the action is dismissed by a United States District Court for improper venue, then, whether or not the time limita-

tion for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or entered against the plaintiff, or after the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, or the action is dismissed by a United States District Court for improper venue." 735 ILCS 5/13—217 (West 1994).

Plaintiffs assert that because this action was filed within a year of dismissal of the federal action, the present action is timely under section 13—217. Defendants counter that plaintiffs are entitled only to a single refiling and argue that the present action is a second refiling because of the previously dismissed federal action and the previously filed and dismissed state action.

The Illinois Supreme Court has interpreted section 13—217 as permitting only one refiling. *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 254, 582 N.E.2d 720, 721 (1991). The pertinent procedural aspects of that case are similar to those here.

In *Flesner*, plaintiffs initiated their lawsuit in federal court. The district court dismissed the case for lack of subject matter jurisdiction. Plaintiffs refiled their action in state court and later voluntarily dismissed their lawsuit. Plaintiffs subsequently refiled their suit for a second time in state court. According to *Flesner*, after the district court dismissed their suit for lack of jurisdiction, section 13—217 permitted only a single refiling.

Plaintiffs contend that the present case can be distinguished from *Flesner* in view of *Fanaro v. First National Bank*, 160 Ill. App. 3d 1030, 513 N.E.2d 1041 (1987). This argument fails because *Fanaro* is no longer the law in view of the recent Illinois Supreme Court decision in *Timberlake v. Illini Hospital*, 175 Ill. 2d 159 (1997).

In *Fanaro*, the plaintiff filed an action in state court, followed by an action in federal court, followed by a second state filing. *Fanaro* held that a federal district court's refusal to exercise pendent jurisdiction over the state law claims after the federal claims were dismissed was distinguishable from a dismissal for lack of subject matter jurisdiction and, thus, the federal filing did not constitute the single permissible refiling under section 13—217. *Fanaro*, 160 Ill. App. 3d at 1036-37, 513 N.E.2d at 1044-45.

This first district decision was criticized and not followed by the third district in *Timberlake v. Illini Hospital*, 277 Ill. App. 3d 1041, 661 N.E.2d 1145 (1996). The Illinois Supreme Court recently affirmed

that decision, stating "a dismissal for lack of supplemental jurisdiction [which now includes pendent jurisdiction] has no different effect on a plaintiff's right to refile under section 13—217 than does a dismissal for lack of subject matter jurisdiction generally." *Timberlake v. Illini Hospital*, 175 Ill. 2d at 165.

Therefore, the case filed in federal court was the first filing, the first refiling was the case filed on October 13, 1994, and the second, impermissible refiling was the case filed on October 26, 1996.

## Section 13—208

■ The Kos assert one last point—that defendant Arbuckle's temporary absence from the State of Illinois tolled the running of the statute of limitations as to him, pursuant to section 13—208 of the Illinois Code of Civil Procedure. This argument must be rejected. Section 13—208 provides in pertinent part:

> "(a) If, when the cause of action accrues against a person, he or she is out of the state, the action may be commenced within the times herein limited, after his or her coming into or return to the state; and if, after the cause of action accrues, he or she departs from and resides out of the state, the time of his or her absence is no part of the time limited for the commencement of the action.
>
> (b) For purposes of subsection (a) of this Section, no person shall be considered to be out of the State or to have departed from the State or to reside outside of the State during any period when he or she is subject to the jurisdiction of the courts of this State with respect to that cause of action pursuant to Sections 2—208 and 2—209 of this Act ***." 735 ILCS 5/13—208 (West 1994).

The record is not clear as to when Arbuckle left Illinois nor for how long, though defendants accept for purposes of argument that he has been a resident of Texas. Here, not only was Arbuckle subject to service of process outside of Illinois, pursuant to the Illinois long-arm statute, he was made a party to the California action in May 1993. Arbuckle was, at all times, subject to the jurisdiction of Illinois.

## CONCLUSION

The October 13, 1994, cause of action constituted the one and only permissible refiling under section 13—217 of the Illinois Code of Civil Procedure. Thus, having exhausted their one-time right to refile, plaintiffs could not institute a new action on October 26, 1994. We conclude that all claims against all defendants are barred. Ac-

46

cordingly, for all the reasons stated, the judgment of the circuit court is affirmed as to all defendants.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur.