William R. BACHMAN, Plaintiff,

v.

BEAR, STEARNS & CO., INC.,
a Delaware corporation,
Defendant.

No. 98 C 7249.

United States District Court,
N.D. Illinois,
Eastern Division.

June 16, 1999.

Order Denying Reconsideration
Aug. 18, 1999.

Michael Patrick Mullen, Mullen & Foster, Chicago, IL, for plaintiff.

Roger L. Taylor, Martin T. Tully, Katheryn Kim Frierson, Kirkland & Ellis, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff William R. Bachman (Bachman) brings this action against defendant Bear, Stearns & Co., Inc. (Bear Stearns) seeking compensation for defendant's alleged role in a scheme orchestrated by the directors of Bachman's former employer. Bachman's four-count complaint alleges conspiracy to defraud, fraud, negligent misrepresentation and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), 815 ILCS 505/1 *et seq.* Bear Stearns has moved to dismiss on grounds that the action is barred by the applicable statutes of limitations and that the complaint fails to state a claim. For the reasons set forth below, defendant's motion is granted and plaintiff's complaint is dismissed in its entirety.

### BACKGROUND

Because this is a motion to dismiss we must accept as true all well-pleaded allegations in the complaint. *Land v. Chicago Truck Drivers Union,* 25 F.3d 509, 511 (7th Cir.1994). Bachman was employed by Calumet Coach Corporation (Coach) from 1967 through June 1990, and was a common and preferred stockholder of Coach's parent corporation, Calumet Acquisition Corporation (Calumet). The companies were involved in the manufacture of trailers and vehicles to house specialized medical imaging products for medical care providers (cplt.¶ 66). In September 1988, Merrill Lynch Interfunding, Inc. (MLIF) purchased a majority interest in Calumet. John Ferrell (Ferrell) was employed as a vice-president of MLIF and was the senior employee responsible for the Calumet purchase transaction (cplt.¶¶ 8,16).

As a component of the purchase transaction Bachman and other management shareholders sold half the equity they then owned in the predecessor company for cash and converted the other half into an increased percentage of common stock ownership in Calumet (cplt.¶ 15). They also entered into new stockholder's and employment agreements (cplt.¶ 17). The stockholder's agreement provided, *inter alia,* that Bachman would participate in an increased percentage of common stock if Calumet met certain profit targets, which it did (cplt.¶ 19); that one of three-named independent organizations, including Bear Stearns, would be selected to ascertain the fair market value of the stock, should the need arise (cplt.¶ 18); and that MLIF, Calumet, or other shareholders could acquire Bachman's common stock upon his employment termination at either fair market value or book value, depending on whether Bachman was terminated for cause

(cplt.¶ 17). At the time of these events Calumet common stock had a lower book value than market value (cplt.¶ 23).

Bachman alleges that Joe Snyder (Snyder), Calumet's president and chief executive officer, and Ferrell tried to force Bachman to resign so that Calumet could reacquire his stock at book value (cplt.¶ 41). Bachman refused to leave. In a meeting on May 7, 1990, Bachman was discharged without cause, effective June 30, 1990, and an offer was tendered to purchase his common stock for $188,802 (cplt.¶¶ 43, 49). Bachman rejected the offer and, believing that other Calumet shareholders were withholding relevant financial documents in an effort to defraud him of his employment and the true value of his stock, Bachman sued Calumet, MLIF, Ferrell, and Snyder (the Calumet defendants) in the Circuit Court of Cook County on October 17, 1990. (*Bachman v. Calumet Acquisition Corp., et. al* (*Bachman I* ), No. 90CH10162).

On November 8, 1990, Calumet exercised its option to acquire all of Bachman's common stock at fair market value and arranged for a stock valuation by Bear Stearns in accordance with the procedures set forth in the shareholder agreement (cplt.¶ 51). Bachman did not object to Bear Stearns being selected to conduct the valuation (cplt.¶ 53), and the firm issued its first report on January 28, 1991. Bear Stearns concluded that the fair market value of Calumet's common stock equity on January 17, 1991, was $51 million and that Bachman's percentage of the fully diluted common stock was 2.49 per cent. Bear Stearns submitted a revised report in December 1991, which valued Calumet at $53 million, and, accordingly, the value of Bachman's stock interest at $1,312,000.

After contentious discovery battles and a lengthy trial, the court entered its judgment on May 5, 1995 (*Bachman I* Order),

awarding compensatory and punitive damages in favor of Bachman on claims of fraud, breach of contract and breach of fiduciary duty. Rejecting the Bear Stearns' calculations, the court found that Calumet's stock equity was actually worth $95 million, that Bachman's percentage of the fully diluted common stock was 3.18 per cent, and that the fair market value of Bachman's stock on January 17, 1991, was $3,021,000 (Order at 60).

Despite the fact that Bear Stearns was not a party to the litigation, the court also found that Bear Stearns acted in bad faith in valuing Calumet's stock, based on evidence that the firm had destroyed documents given to the valuation committee, had twice revised its valuation, had unreasonably skewed the pool of comparable companies, and had improperly used a harmonic mean, rather than an arithmetic mean, for the computation (Order at 61). Trial testimony revealed that contemporaneously with the Bachman valuation the Calumet defendants were developing a preliminary SEC registration statement for a possible IPO. The company's valuation for the IPO prospectus was based on a different set of comparable companies than the set used for the Bachman valuation (cplt. ¶ 76; Order at 29–30). Using the IPO set, which included health care companies that *arguably bore a greater resemblance to Calumet*, Kidder Peabody provided an estimated valuation of Calumet at $115 to $130 million (cplt. ¶ 78; Order at 43). Shortly thereafter, in June 1991, Merrill Lynch, Kidder Peabody and Smith Barney reached a consensus preliminary equity valuation in June 1991 of $100 million (Order at 44, cplt. ¶ 78). It is unclear from Bachman's complaint whether Bear Stearns was made aware of these estimates.[1]

It was clear to the state court, however, that Bear Stearns revised its valuation

---

1. Our confusion stems from the fact that the complaint sometimes includes Bear Stearns as one of the "co-schemers," while at other times it does not. *See* plf.memo in opp. at 4–5; cplt. ¶¶ 10, 70. This ambiguity raises problems for plaintiff under Federal Rule of Civil Procedure 9(b) which requires claims of fraud to be pleaded with specificity.

down from $70 million to $51 million in the two weeks before the report was issued and then destroyed all documents showing how the original figure had been computed (Order at 52, 61). It was also clear that Bear Stearns had been given three inconsistent sets of unit sales projections and had used the set which produced the lowest valuation (cplt.¶ 84). Bachman now contends that the Bear Stearns valuations were fraudulent misrepresentations prepared in bad faith to help the Calumet defendants acquire his stock for less than its true value. However, apparently because evidence illuminating Bear Stearns' procedures came out late in the trial, the firm was never joined as a defendant in *Bachman I* (plf.mem.in opp. at 2).

On May 1, 1996, Bachman filed a new three-count complaint against Bear Stearns in federal court *Bachman v. Bear Stearns & Co., Inc. (Bachman II)*,, and the case was assigned to Judge Ann Williams. A second amended complaint filed February 12, 1997, alleged RICO violations, fraud, and negligent misrepresentation. On December 2, 1997, the court granted Bear Stearns' motion to dismiss for failure to state a RICO claim in violation of federal law, and then declined to exercise its supplemental jurisdiction over Bachman's state fraud and negligent misrepresentation claims. *Bachman II*, 1997 WL 769554 (N.D.Ill.1997). On May 1, 1998, Judge Williams denied Bachman's motion for reconsideration and dismissed as moot his motions to amend the judgment and to file a third amended complaint. Bachman appealed the dismissal and the Seventh Circuit has just issued its affirmance. *Bachman v. Bear, Stearns & Co., Inc.*, —— F.3d ——, 1999 WL 335343 (7th Cir.1999).

In the meantime, Bachman refiled the state law claims in state court on October 15, 1998. (*Bachman v. Bear, Stearns & Co., Inc. (Bachman III)*). Defendant removed the action to federal court (No. 98 C 7249) and filed this motion to dismiss the suit as time-barred and for failure to state a claim pursuant to Fed.R.Civ.P.

12(b)(6). Defendant argues that Bachman is merely trying to relitigate the injuries caused by the Calumet defendants—for which he has already been compensated—and establish Bear Stearns' "guilt by association" (def.mem.at 8). Bachman contends that this is his first chance to hold Bear Stearns accountable for its role in a scheme to defraud him of his property.

### ANALYSIS

We begin by considering whether plaintiff's claims were filed too late. A federal district court sitting in diversity must apply the statute of limitations laws of the state in which it sits. *Malone v. Bankhead Enterprises, Inc.*, 125 F.3d 535 (7th Cir.1997). Bachman's claims for conspiracy to defraud, fraud and negligent misrepresentation are subject to a five-year statute of limitations. 735 ILCS 5/13–205; *see Melko v. Dionisio*, 219 Ill.App.3d 1048, 1058, 162 Ill.Dec. 623, 580 N.E.2d 586, 591 (1991). A claim under the Consumer Fraud Act must be filed within three years of the date the cause of action accrues. 815 ILCS 505/10a(e); *see Ko v. Eljer Industries, Inc.*, 287 Ill.App.3d 35, 43, 222 Ill.Dec. 769, 678 N.E.2d 641, 646 (1997).

Under Illinois law, a plaintiff need not have knowledge that an actionable wrong was committed before the statute of limitations period begins to run. *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981). The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that the injury was wrongfully caused. *Id.*, 88 Ill.2d at 416, 58 Ill.Dec. 725, 430 N.E.2d at 980. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action. *Id.* The parties do not dispute that this "discovery rule" applies here, but they locate the date of discovery at opposite ends of the alleged scheme to defraud. Bachman argues that the cause of action began to accrue November 16, 1993, when trial testimony by Bear Stearns' Mark Lee first

revealed that his firm had concealed certain unit sales projections provided by the Calumet defendants. Before that time, Bachman argues, "the Bear Stearns' reports could not have been known to be 'wrongfully caused'" (plf. mem. in opp at 2). Defendants, on the other hand, place the date of discovery as early as spring 1990, when Bachman first began to demand access to Calumet's corporate records (Order at 7). They suggest that his refusal to accept the May 7 offer indicates that he had some knowledge as to the Calumet defendants' efforts to conceal the real value of his stock (def.mem.at 5–6). At the very latest, they argue, the statute should begin to run on January 28, 1991, the date Bear Stearns issued its first report. Defendants cite *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277 (7th Cir.1994), for the proposition that once a party has notice of a wrong he is under a mandate to thoroughly investigate "the potential liability of all parties involved." *Id.*, at 284.

We agree that *Checkers* is closely analogous. In that case the relevant chronology began when City National Bank (CNB) requested financial statements from loan applicant Robert Sheridan. Sheridan submitted several financial documents, including one entitled "Accountants' Compilation Report" prepared by an accounting firm. The report included a disclaimer noting that it was a compilation of financial information self-reported by the applicant without any independent audit or review by the accountants. After some delay and the submission of updated compilation reports, the bank agreed to the $500,000 loan. When the customer subsequently defaulted, CNB discovered that the financial reports had grossly overstated the debtor's assets. The bank filed a lawsuit and an adversary action in bankruptcy court seeking repayment, damages, fees and costs. During a deposition of the accounting partner responsible for the compilation report, CNB learned that the firm had maintained a close business relationship with the debtor for several years and had reason to

know that the financial statements were false or misleading.

Within six months after the deposition CNB filed suit against the accounting firm alleging fraudulent misrepresentation and negligence. The defendant moved to dismiss the suit as time-barred, arguing that the statute of limitations clock began to run on the day debtor defaulted. The bank argued instead that the clock started the day CNB deposed the accounting partner and learned of the accounting firm's relationship to the debtor. The district court agreed with defendant and dismissed the suit. The Seventh Circuit affirmed, concluding that CNB had notice as of the date of default of the need to investigate whether a cause of action existed against the accounting firm for any damages arising from Sheridan's default. The court noted that Sheridan's repeated inability to repay the loan, despite his substantial net worth as reported by the accounting firm, should have led CNB to consider the liability of all parties involved in the loan application process. "[I]f a claim accrues even though the victim does not know that he has a legal entitlement to recover, the fact that the victim does not know who would be the right defendant cannot matter." *Id.*, at 284, *quoting Central States Pension Fund v. Navco*, 3 F.3d 167, 171 (7th Cir. 1993), *cert. denied*, 510 U.S. 1115, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994); *see also LeBlang Motors, Ltd. v. Subaru of America, Inc.*, 148 F.3d 680 (7th Cir.1998) (rejecting argument that claim accrued only when identity of defendant was discovered during the course of a prior lawsuit).

■ The situation confronting Bachman was almost identical. The complaint indicates that Calumet officials first attempted to purchase Bachman's shares on May 7, 1990, for an amount significantly below their market value. Bachman rejected the offer. The scheme to acquire Bachman's stock then progressed to include a legitimizing "independent" stock valuation. When first received, Bachman assumed

the report was merely "mistaken." Later, during trial proceedings against the Calumet defendants, Bachman learned that Bear Stearns may have knowingly misrepresented the stock value and Bachman's rightful share. But *Checkers* tells us that the discovery date is not the date of Lee's trial testimony, it is the date that Bachman discovered that he had been injured. The only significant factual distinction between the two cases is that Bear Stearns' valuation report did not predate the underlying injury, as did the compilation report in *Checkers*. Bear Stearns' conduct giving rise to the alleged cause of action here occurred subsequent to the initial injuries at the heart of *Bachman I*, namely defendants' breach of fiduciary duties to a minority shareholder and their plan to have Bachman fired for the purpose of obtaining his stock at less than fair market value. At best, however, that fact only delays the start of the limitations period until the date the report was issued by Bear Stearns, as both plaintiff and defendant appear to concede (def.mem.at 5; plf. mem.in opp. at 6). Bachman rejected the report's valuation of his stock, believing that it did not accurately reflect the market value. At that point the onus was on Bachman to include Bear Stearns in his investigation of any potential causes of action, just as CNB was obligated to look behind the financial compilation reports submitted by the accounting firm. It does not matter that "prior [to Lee's trial testimony] the reports were believed to be mistaken but not fraudulently prepared by Bear Stearns" (plf.mem.in opp. at 2). We conclude that the three-and five-year statutes of limitations began to run January 28, 1991.

■ Plaintiff argues that the lawsuit is not time-barred even if we use January 28, 1991 as the start date. In his response he raises for the first time the existence of two tolling agreements. Defendants do not contest their validity. According to a letter dated November 29, 1995, the parties tolled "any applicable statute of limitations" from November 29, 1995, until "ten days following notice by either party of the termination of this tolling agreement or March 1, 1996, whichever occurs first" (plf.mem.in opp., ex.A) On February 23, 1996, the parties entered into a second agreement tolling "any applicable statute of limitations" from February 23, 1996, until "ten days following notice by either party of the termination of this tolling agreement or May 1, 1996, whichever occurs first" (plf.mem.in opp., ex.B). We agree with defendants that the agreements would not toll the statute for a cause of action that had already expired. Thus, the agreements do not affect plaintiff's Consumer Fraud Act claims, which expired January 28, 1994.

■ Bachman tries to save the statutory claim by alleging that Bear Stearns fraudulently concealed his cause of action (plf.mem.in opp. at 8). Thus, he argues, Illinois' fraudulent concealment statute, 735 ILCS 5/13–215, provides five years after discovery in which he can bring suit. The case law does not support his conclusion. "[A]lthough the 'fraudulent concealment' exception [to Illinois' limitations statute] literally reads that the right of action for concealment of fraud remains for a period of five years from the date the plaintiff actually discovers the fraud, … [t]he applicable statutory period here commences at the time the plaintiff, through ordinary diligence, should have discovered the fraudulent actions causing its injuries." *National Family Ins. Co. v. Exchange Nat. Bank of Chicago*, 474 F.2d 237, 239 (7th Cir.), *cert. denied*, 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59 (1973); *Smith v. Cook County Hosp.*, 164 Ill.App.3d 857, 862, 115 Ill.Dec. 811, 518 N.E.2d 336, 340 (1st Dist.1987).[2] We have already stated

---

**2.** In *National Family*, for example, an insurer that had been reinsured by an insolvent company sought to recover its losses from a bank that had fraudulently misrepresented to plaintiff the true financial status of the reinsurer. The court confirmed that, notwithstanding al-

that the discovery event was the issuance of the January 1991 report. Of course, Bear Stearns did nothing to actively conceal its valuation of Bachman's stock. On the contrary. In fact, the only allegation that approaches "active concealment" concerns Bear Stearns' failure to disclose the third set of unit projections. But that was long after Bachman was aware that he had been injured and consequently does not affect the accrual of his cause of action under the Consumer Fraud Act.

■ The tolling agreements do appear to toll the statute of limitations on the common law claims at least through May 1, 1996. On that date plaintiff filed the *Bachman II* complaint in federal court alleging RICO violations and the state law claims here. That case was dismissed on December 2, 1997, and the motion for reconsideration denied on May 1, 1998. This suit was filed October 15, 1998, within the one-year extension of the statute of limitations provided by 735 ILCS 5/13–217 for a case dismissed by a federal district court for lack of jurisdiction. A dismissal for lack of supplemental jurisdiction has no different effect on a plaintiff's right to refile under section 13–217 than does a dismissal for lack of subject matter jurisdiction generally. *Timberlake v. Illini Hospital*, 175 Ill.2d 159, 165, 221 Ill.Dec. 831, 676 N.E.2d 634, 637 (1997). The section operates as a savings statute, with the purpose of facilitating the disposition of litigation on the merits and to avoid its frustration upon ground unrelated to the merits. *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill.2d 489, 497, 230 Ill.Dec. 209, 693 N.E.2d 338, 342 (1998). We conclude that the tolling agreements, *Bachman II*, and 735 ILCS 5/13–217, operated together to extend the period for filing the common law fraud claims against Bear Stearns through at least December 2, 1998, if not May 1, 1999.

legations of fraudulent concealment, the cause of action against the bank accrued from the date the reinsurer's insolvency was discovered.

*See Wilson v. Evanston Hospital*, 276 Ill. App.3d 885, 888, 213 Ill.Dec. 469, 659 N.E.2d 99, 102 (1st Dist.1995) (holding that the time for refiling an action under section 13–217 begins to run when first post-trial motion is denied). Plaintiff's claims of fraud were timely filed.

■ Defendant argues in the alternative, however, that Bachman's complaint must be dismissed for failure to state a claim. In order to state a cause of action for fraud the plaintiff must establish (1) a false statement of material fact (2) known or believed to be false by the party making it; (3) an intent to induce the other party to act; (4) an action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Adler v. William Blair & Co.*, 271 Ill.App.3d 117, 207 Ill.Dec. 770, 648 N.E.2d 226 (1st Dist. 1995). Bear Stearns argues in particular that Bachman has failed to plead any detrimental reliance. We agree. The complaint is unequivocal about Bachman's rejection of the Bear Stearns valuation. He did not sell his shares in reliance on Bear Stearns' numbers, nor did he abandon any plans to litigate his claims against the Calumet defendants. Bachman argues that he relied on his belief that Bear Stearns would act in good faith if called upon to perform a stock valuation when he agreed to the new shareholders' agreement during the MLIF purchase transaction (cplt. at ¶¶ 134; plf. mem.in opp. at 12). Maybe so, but that is not reliance on any fraudulent statement by Bear Stearns. Without some further explanation we also fail to understand why the $935,509.49 in attorney's fees were caused by reliance on the Bear Stearns valuation, unless he means to suggest that "but for" the undervaluation he would not have had to prosecute his suit against the Calumet defendants[3] (plf.

3. Arguably, perhaps, Bear Stearns' failure to initially provide copies of the third version of unit sales projections hindered Bachman's lawyers at the outset of *Bachman I* (cplt. at ¶¶ 138–140), but the documents were ulti-

mem.in opp. at 12). However, "but for" causation is not proximate causation, which is required, nor is it reliance, which is also required.

Contrary to Bachman's assertion we need not defer our decision on detrimental reliance for later resolution by the jury. A motion to dismiss tests the adequacy of the pleadings, and a party pleading fraud must allege facts sufficient to establish its reliance on the alleged misrepresentations. *Barille v. Sears Roebuck and Co.*, 289 Ill.App.3d 171, 176, 224 Ill.Dec. 557, 561–562, 682 N.E.2d 118, 122–123 (1st Dist. 1997). Even if we accept all of Bachman's allegations as true, we still could not find that he had established any justifiable, detrimental reliance on Bear Stearns' reports or other alleged misrepresentations. It is not even "possible to hypothesize facts, consistent with the complaint, that would make out a claim." *See Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir.1995).

Lastly, we note that Bachman has not explained why the state court award of nearly $4 million in his favor has not made him whole for any injuries caused by the scheme. *See Central Nat'l Chicago Corp. v. Lumbermens Mutual Casualty Co.*, 45 Ill.App.3d 401, 408, 3 Ill.Dec. 938, 943, 359 N.E.2d 797, 802 (1st Dist.1977) ("[T]here can be no recoverable loss where plaintiffs have been compensated for the injury suffered."). Defendant's motion is granted and plaintiff's complaint is dismissed with prejudice.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff William R. Bachman (Bachman) asks us to reconsider our June 16, 1999 Memorandum Opinion and Order dismissing his action against Bear, Stearns & Co.,

Inc. (Bear Stearns) as time-barred and bereft of a cognizable claim against the defendant.[1]

Relief under Rule 60(b) " 'is an extraordinary remedy' " which is " 'granted only in exceptional circumstances.' " *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir.1986), *quoting United States v. Zima*, 766 F.2d 1153, 1157 (7th Cir.1985). As plaintiff notes, a court may grant a motion for reconsideration if there is a significant change in the law or fact or if the court misunderstood a party, made an error of law, or rendered a decision outside the adversarial issues presented. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990), *citing Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983); *United States ex rel. Lynch v. Sandahl*, 793 F.Supp. 787, 795–96 (N.D.Ill.1992). We do not believe that Bachman is a "misunderstood litigant" nor has he presented us with any new evidence or law compelling a different conclusion.

The crux of Bachman's argument is that his recovery in *Bachman v. Calumet*, No. 90 CH 10162, p. 47 (Ill.Ch.Ct.1995) (*Bachman I*), was insufficient to make him whole. He insists, first, that the award was too low because his expert witness was forced to use inaccurate revenue projections as the basis for his estimate of the value of Bachman's stock. It is uncontroverted, however, that Judge Ericsson ordered the third projection to be made a part of the record (cplt. ¶ 81; plf. mem.in.opp. at p. 3; *Bachman I* order, p. 47). Consequently, it was with a full awareness of this higher revenue projection that Judge Ericsson issued his ruling granting almost $4 million in relief to Bachman, $3,021,000 of which was the fair market value of his common stock. Bach-

---

mately produced and the court's judgment was in Bachman's favor. If there was any modicum of reliance on Bear Stearns' representations that the relevant documents had been produced, it was not in the end detrimental to Bachman's position in the litigation.

1. *Bachman v. Bear, Stearns & Co., Inc.*, 1999 WL 417329 (N.D.Ill.) (*Bachman III*). We assume a familiarity with that opinion and the chronology contained therein.

man even acknowledges in his memorandum that "Bear Stearns [sic] misrepresentation was corrected in the award...." The final stock valuation is now *res judicata* as between Bachman and the Calumet defendants and, for the reasons we set forth in our earlier memorandum and order, Bachman cannot collaterally attack Judge Ericsson's May 1995 order by filing a new action against Bear Stearns.

■ Second, Bachman argues that Bear Stearns' conduct "produced damages in that attorneys fees and expenses were incurred to correct the misrepresentation" (mem. at 8). With respect to these unrecovered attorney's fees, plaintiff is correct that "[w]here the natural and proximate consequences of a wrongful act have been to involve plaintiff in litigation with others, there may be a recovery in damages against the author of such act, measured by the reasonable expenses incurred in such litigation." *Nalivaika v. Murphy*, 120 Ill.App.3d 773, 458 N.E.2d 995, 76 Ill.Dec. 341 (1st Dist.1983), *quoting Ritter v. Ritter*, 381 Ill. 549, 554–555, 46 N.E.2d 41, 44 (Ill.1943). However, as the court in *Ritter* went on to explain, "where an action based on the same wrongful act has been prosecuted by the plaintiff against defendant to a successful issue, plaintiff cannot in a subsequent action recover as damages, his costs and expenses in the former action." Bachman is not in the same posture as the plaintiffs in *Nalivaika* who relied on defendants' misrepresentations when buying real property only to be sued by the disappointed would-be buyers. Here, we have earlier concluded that Bachman did not detrimentally rely on the Bear Stearns report, 1999 WL 417329, *6 (N.D.Ill.), and he has already successfully prosecuted a suit to recover damages arising from the Calumet defendants' undervaluation of his stock. If there were some additional attorney's fees incurred during the Calumet litigation because Bear Stearns delayed production of the third revenue projection, Judge Ericsson had the authority to find Bear Stearns in contempt of court and impose a reasonable fine.[2] *See* Illinois Supreme Court Rule 219(c), 754(e). That was the appropriate time and place to deal with any discovery abuse. This is neither. To allow successful plaintiffs to later sue every uncooperative witness for the additional attorney's fees resulting from delay would create a gigantic end-run around the American rule and clog the courts with unwarranted, duplicative litigation.[3]

■ Bachman's other arguments are similarly unpersuasive. He argues, with some innovation and great circularity, that the implied promise of good faith contained in the "contract by Bear Stearns to undertake the valuation in 1991 for Bachman's benefit" was false when made (mem. at 4). However, a party may not use a motion for reconsideration to introduce new theories or rehash old arguments. *See Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996), *as cited in Bachman v. Bear Stearns & Co., Inc.*, 1998 WL 246452 (N.D.Ill.) (Bachman II) (denying motion to reconsider). Because he presents no significant changes in law or fact, plaintiff's objections to the "discovery date" being set at January 28, 1991, are also inappropriate.

Plaintiff's motion to reconsider and motion to amend the judgment pursuant to Rule 59 are denied.

---

**2.** Indeed, Judge Ericsson's harsh words for the company may have been intended as a non-monetary rebuke. (*See Bachman I* order, p. 61).

**3.** We do not suggest, of course, that subsequent actions to recover attorney's fees are always impermissible. If Bear Stearns' actionable conduct had forced plaintiff to sue the Calumet defendants in the first place, Bachman might well have been able to later sue the company for fees and costs incurred. In this case, however, *Bachman I* was already well under way before the January report was issued. At most, Bear Stearns' conduct prolonged pending litigation.